ANTHONY W. OLIPHANT *v.* COMMISSIONER OF
CORRECTION
(SC 17225)

Sullivan, C. J., and Borden, Katz, Palmer and Zarella, Js.

Argued March 7—officially released July 26, 2005

*Christopher M. Neary,* deputy assistant public defender, with whom was *Sandra J. Crowell,* assistant public defender, for the appellant (petitioner).

*James A. Killen,* senior assistant state's attorney, with whom, on the brief, were *Michael Dearington,* state's attorney, and *Linda N. Howe,* senior assistant state's attorney, for the appellee (respondent).

*Opinion*

SULLIVAN, C. J. Following our grant of certification,[1] the petitioner, Anthony W. Oliphant, appeals from the judgment of the Appellate Court affirming the habeas court's sua sponte dismissal of his petition for a writ of habeas corpus. The petitioner's principal claim is that the Appellate Court improperly concluded that the habeas court lacked subject matter jurisdiction over his petition because he was not in "custody" within the meaning of General Statutes § 52-466[2] when his petition was filed. We disagree and affirm the judgment of the Appellate Court.

The opinion of the Appellate Court sets forth the following facts and procedural history. "On April 25, 1995, the petitioner was convicted of two crimes under docket numbers CR7-16272 and CR7-163805. On CR7-16272, he was sentenced to incarceration for one year; on CR7-163805 he was sentenced to incarceration for three months to run consecutive to the one year term

---

[1] We granted certification limited to the following issue: "Did the Appellate Court properly conclude that the habeas court lacked subject matter jurisdiction over the petitioner's habeas corpus petition?" *Oliphant* v. *Commissioner of Correction*, 270 Conn. 910, 853 A.2d 526 (2004).

[2] General Statutes § 52-466 provides in relevant part: "(a) An application for a writ of habeas corpus shall be made to the superior court or to a judge thereof for the judicial district in which the person whose custody is in question is claimed to be illegally confined or deprived of his liberty, provided any application made by or on behalf of a person confined in the Connecticut Correctional Institution, Enfield-Medium or the Carl Robinson Correctional Institution, Enfield, shall be made to the superior court or a judge thereof for the judicial district of Tolland.

"(b) The application shall be verified by the affidavit of the applicant for the writ alleging that he truly believes that the person on whose account the writ is sought is illegally confined or deprived of his liberty.

"(c) The writ shall be directed to some proper officer to serve and return, who shall serve the same by putting a true and attested copy of it into the hands of the person who has the custody of the body of the person who is directed to be presented upon the writ. If the officer fails to make immediate return of the writ, with his actions thereon, he shall pay fifty dollars to the person so held in custody. . . ."

for a total effective sentence of fifteen months incarceration (April sentences or April convictions). On September 1, 1995, the petitioner was convicted on another charge and sentenced to fifteen years of incarceration, execution suspended after seven years, with five years of probation (September sentence or September conviction). The September sentence was to run concurrent to the April sentences. One hundred and twenty-nine days passed between the imposition of the April sentences and the imposition of the September sentence." *Oliphant* v. *Commissioner of Correction,* 83 Conn. App. 10, 11, 847 A.2d 1080 (2004).

Thus, the petitioner's April sentences ran for 129 days before the concurrent September sentence was imposed. After the concurrent sentence was imposed, the April sentences and the September sentence overlapped until the April sentences expired. On December 3, 1998, the petitioner, acting pro se, filed the present petition for a writ of habeas corpus. At that time, the April sentences had expired fully and he was serving only the September sentence.

The petition consisted of a preprinted form. "In the space provided to list sentences . . . the petitioner listed only the April sentences. On the form the petitioner claimed, inter alia, that his right to be free of double jeopardy was violated, that his attorney failed to contact certain witnesses and threatened other witnesses, that he was the victim of selective or vindictive prosecution and that he was not tried by an impartial jury. The form allowed the petitioner to challenge the legality of his convictions or the terms of his confinement. The form provided that it was to be used to challenge either the former or the latter, but not both. The petitioner challenged only the underlying convictions and not his confinement. Appended to the form were two typed pages containing a litany of allegations, including: a conspiracy had been formed against the

petitioner because he had made a civil rights complaint; the petitioner's name had been changed without his consent, which led to the denial of telephone privileges during his trials; a conflict existed between him and his attorney; and his attorney was ineffective for a variety of reasons.

"The court, *Pittman, J.*, dismissed the petitioner's telephone claim as moot. Subsequently, a special public defender was assigned to represent the petitioner. Thereafter, the special public defender moved to withdraw claiming that there were no nonfrivolous claims that she could present. The petitioner opposed that motion. On June 12, 2002, the court, *R. Robinson, J.*, dismissed the petition[3] and allowed the special public defender to withdraw.

"In dismissing the petition, the [habeas] court noted that the petitioner had finished serving the April sentences, which were the subject of the present habeas action. The court held that in order for a habeas court to have jurisdiction over a habeas matter, the petitioner must be in custody. In the instant action, the petitioner was not in the custody of a Connecticut facility or official, or on a Connecticut based probation or parole for the subject convictions [the April convictions] at the time of the filing of said petition. This court does not have jurisdiction to grant the [p]etitioner the relief that he seeks and, therefore, this matter must be dismissed." (Internal quotation marks omitted.) Id., 11–12.

The petitioner appealed from the judgment of the habeas court to the Appellate Court, which affirmed the habeas court's judgment of dismissal. Id., 16. This certified appeal followed.

---

[3] The habeas court dismissed the petition pursuant to Practice Book § 23-29, which provides in relevant part: "The judicial authority may, at any time, upon its own motion or upon motion of the respondent, dismiss the petition, or any count thereof, if it determines that:

"(1) the court lacks jurisdiction . . . ."

The petitioner claims on appeal that the Appellate Court improperly failed to construe liberally his pro se habeas petition when it concluded that the petition did not challenge his unexpired September conviction. Alternatively, he claims that, even if the petition is construed as challenging the April convictions, the Appellate Court improperly concluded that the habeas court lacked subject matter jurisdiction. Specifically, he argues that he was in custody under the challenged April sentences at the time his petition was filed. Additionally, the petitioner claims that the Appellate Court improperly affirmed the habeas court's dismissal of his habeas petition sua sponte without notice or a hearing. We reject the petitioner's first two claims and decline to address his third claim because it is outside the scope of the question certified for review by this court. See Practice Book § 84-9.[4]

As a preliminary matter, we set forth the standard of review. "The standard of review of a motion to dismiss is . . . well established. In ruling upon whether a complaint survives a motion to dismiss, a court must take the facts to be those alleged in the complaint, including those facts necessarily implied from the allegations, construing them in a manner most favorable to the pleader. . . . A motion to dismiss tests, inter alia, whether, on the face of the record, the court is without jurisdiction. . . . [B]ecause [a] determination regarding a trial court's subject matter jurisdiction is a question of law, our review is plenary." (Internal quotation marks omitted.) *Neiman* v. *Yale University*, 270 Conn. 244, 250–51, 851 A.2d 1165 (2004). "This court has often stated that the question of subject matter jurisdiction, because it addresses the basic competency

---

[4] Practice Book § 84-9 provides in relevant part: "The issues which the appellant may present are limited to those raised in the petition for certification, except where the issues are further limited by the order granting certification."

of the court, can be raised by any of the parties, or by the court sua sponte, at any time." (Internal quotation marks omitted.) *ABC, LLC* v. *State Ethics Commission*, 264 Conn. 812, 822–23, 826 A.2d 1077 (2003).

I

Because it is undisputed that the petitioner was in custody on his September conviction within the meaning of § 52-466 when he filed his habeas petition, we first address the petitioner's claim that the Appellate Court failed to construe his petition broadly as an attack on his September conviction. The petitioner cites *Estelle* v. *Gamble*, 429 U.S. 97, 97 S. Ct. 285, 106, 50 L. Ed. 2d 251 (1976), for the proposition that courts must construe pro se pleadings liberally.[5] Although the federal rule of construction for pro se pleadings is not binding on this court, Connecticut follows a similar rule of construction. "[I]t is the established policy of the Connecticut courts to be solicitous of pro se litigants and when it does not interfere with the rights of other parties to construe the rules of practice liberally in favor of the pro se party. . . . The modern trend . . . is to construe pleadings broadly and realistically, rather than narrowly and technically." (Citation omitted; internal quotation marks omitted.) *Hill* v. *Williams*, 74 Conn. App. 654, 655–56, 813 A.2d 130, cert. denied, 263 Conn. 918, 822 A.2d 242 (2003). The courts adhere to this rule to ensure that pro se litigants receive a full and fair opportunity to be heard, regardless of their "lack of legal education and experience . . . ." *Higgins* v.

---

[5] "[A] pro se complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers and can only be dismissed for failure to state a claim if it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." (Internal quotation marks omitted.) *Estelle* v. *Gamble*, supra, 429 U.S. 106.

*Hartford County Bar Assn.*, 109 Conn. 690, 692, 145 A. 20 (1929).

This rule of construction has limits, however. "Although we allow pro se litigants some latitude, the right of self-representation provides no attendant license not to comply with relevant rules of procedural and substantive law." (Internal quotation marks omitted.) *Strobel* v. *Strobel*, 64 Conn. App. 614, 618, 781 A.2d 356, cert. denied, 258 Conn. 937, 786 A.2d 426 (2001). A habeas court "does not have the discretion to look beyond the pleadings and trial evidence to decide claims not raised." (Internal quotation marks omitted.) *Jenkins* v. *Commissioner of Correction*, 52 Conn. App. 385, 406, 726 A.2d 657, cert. denied, 249 Conn. 920, 733 A.2d 233 (1999). In addition, while courts should not construe pleadings narrowly and technically, courts also cannot contort pleadings "in such a way so as to strain the bounds of rational comprehension." (Internal quotation marks omitted.) *Broadnax* v. *New Haven*, 270 Conn. 133, 174, 851 A.2d 1113 (2004).

In his habeas petition, the petitioner listed only the April convictions, which he referred to specifically by docket number. Under "[t]otal effective sentence," the petitioner typed: "Fifteen (15) Months." He listed April 25, 1995, as the sentencing date. Although his petition makes an indirect and passing reference to the September sentence,[6] this reference cannot be read as an allegation that the September sentence had been *enhanced*

---

[6] On the preprinted habeas form, in response to the question that directed him to "[s]tate all facts and details to support [his] claim," the petitioner wrote: "These allegations were [a] harbinger to my *present* false incarceration, resulting in an additional criminal court trial following my misdemeanor trial on March 14, 1995. Which I was imprisoned on April 25, 1995 following my sentencing on the misdemeanor matter . . . ." (Emphasis added.)

by the April convictions,[7] even under a broad and liberal reading. Moreover, at the time of the habeas court's ruling, the petitioner already had raised claims pertaining to the September conviction in a separate habeas petition. In that proceeding, the habeas court held an evidentiary hearing and the petitioner had the opportunity to appeal. *Oliphant* v. *Commissioner of Correction*, 80 Conn. App. 613, 614, 836 A.2d 471 (2003), cert. denied, 268 Conn. 907, 845 A.2d 412 (2004). Because the petitioner had a separate opportunity to be heard with regard to the September conviction, the rationale behind the rule that pleadings should be construed broadly does not apply. Accordingly, we conclude that the habeas court properly construed the petition as contesting the April convictions only.

## II

We next address the petitioner's claim that the Appellate Court improperly concluded that the habeas court lacked subject matter jurisdiction over his petition. The petitioner asserts three arguments in support of this contention. First, he argues that because the custody requirement in § 52-466 is expressed in different terms than the custody requirement in the federal habeas statute, we should interpret the Connecticut statute more expansively. Second, he relies on *Carafas* v. *LaVallee*, 391 U.S. 234, 238–39, 88 S. Ct. 1556, 20 L. Ed. 2d 554 (1968), for the proposition that his petition is not moot because collateral consequences continue to flow from his allegedly illegal expired conviction. Third, he argues

---

[7] Under *Maleng* v. *Cook*, 490 U.S. 488, 493, 109 S. Ct. 1923, 104 L. Ed. 2d 540 (1989) (per curiam), which we adopted in our recent decision in *Lebron* v. *Commissioner of Correction*, 274 Conn. 507, 526–31, 876 A.2d 1178 (2005), the petitioner could pursue his claim that his current conviction had been enhanced by his expired conviction only by way of a habeas attack on his current conviction. Here, the petitioner has attacked only the expired April convictions and has failed to allege that the April convictions enhanced the September sentence.

that the habeas court had subject matter jurisdiction because a series of sentences is viewed as a "continuous term" of custody pursuant to the rule set forth in *Garlotte* v. *Fordice*, 515 U.S. 39, 47, 115 S. Ct. 1948, 132 L. Ed. 2d 36 (1995), and *Peyton* v. *Rowe*, 391 U.S. 54, 67, 88 S. Ct. 1549, 20 L. Ed. 2d 426 (1968).

Our recent decision in *Lebron* v. *Commissioner of Correction*, 274 Conn. 507, 876 A.2d 1178 (2005), disposes of the petitioner's first and second arguments. See id., 529 n.17 (use of different language in state statute does not signal departure from federal habeas precedent); id., 528 n.16 (mootness doctrine does not apply to questions of initial subject matter jurisdiction). In *Lebron*, we held that the custody requirement in § 52-466 is jurisdictional; id., 522–26; and that the collateral consequences of an expired conviction are insufficient to render a petitioner in custody. Id., 530–31. In reaching these conclusions, we interpreted § 52-466 consistently with the federal habeas statute. Id., citing *Maleng* v. *Cook*, 490 U.S. 488, 492, 109 S. Ct. 1923, 104 L. Ed. 2d 540 (1989).

Factual differences between this case and *Lebron* require us, however, to address the petitioner's third argument.[8] In *Lebron*, we relied on *Maleng* for the proposition that habeas courts do not have subject matter jurisdiction over a habeas petition unless the petitioner is in custody on the conviction under attack at the time he files his petition. *Lebron* v. *Commissioner of*

---

[8] The petitioner in *Lebron* had served a 1992 sentence and had been released from custody before he was arrested and charged with the offense that became the basis for a conviction in 1999. *Lebron* v. *Commissioner of Correction*, supra, 274 Conn. 509–10. He filed a habeas petition challenging his 1992 conviction while he was incarcerated pursuant to the unconnected 1999 conviction. Id. In contrast, the petitioner in the present case began serving his September sentence while he was still incarcerated under the April sentences that were the subject of his petition. In other words, the April sentences that he challenges overlapped with the September sentence that he was serving when he filed the habeas petition.

*Correction*, supra, 274 Conn. 514–15. Two other United States Supreme Court cases create a limited exception to the rule articulated in *Maleng*. A habeas petitioner who is serving consecutive sentences may challenge a *future* sentence even though he is not serving that sentence at the time his petition is filed; see *Peyton v. Rowe*, supra, 391 U.S. 67; and he may challenge a consecutive sentence served *prior* to his current conviction if success could advance his release date. *Garlotte v. Fordice*, supra, 515 U.S. 47. In other words, the federal courts view prior and future consecutive sentences as a "continuous stream" of custody for purposes of the habeas court's subject matter jurisdiction. Id., 41.

The petitioner argues that, under the rule in *Garlotte*, "an individual is in custody for purposes of filing a habeas petition if he is serving a series of sentences and the habeas challenge, if successful, would shorten his incarceration." He further argues that (1) his concurrent sentences should be viewed as a continuous term of custody, and (2) he would be entitled to an earlier date of release from his September sentence if his April convictions were overturned. Therefore, his argument continues, he was in custody under the April convictions. In response, the respondent, the commissioner of correction, argues that the rule in *Garlotte* applies only to *consecutive* sentences, and is not applicable to the present case, which involves *concurrent* sentences.

The Appellate Court held that the rule in *Garlotte* does not apply to the petitioner's case for two reasons. First, the court distinguished *Garlotte* because it dealt with consecutive sentences instead of concurrent sentences. *Oliphant v. Commissioner of Correction*, supra, 83 Conn. App. 14–15, 15 n.1, citing *Ford v. Commissioner of Correction*, 59 Conn. App. 823, 829, 758 A.2d 853 (2000). Second, the court held that *Garlotte* is not applicable because the reversal of the April convictions

would have no effect on the September conviction because " 'concurrent sentences automatically begin to run at the same time.' " *Oliphant* v. *Commissioner of Correction*, supra, 15, quoting *Ford* v. *Commissioner of Correction*, supra, 829.

Because *Garlotte* applies only if the petitioner can establish that he would be entitled to an earlier release date if the April convictions were reversed,[9] we first address the Appellate Court's conclusion that the reversal of the April convictions would have no effect on his release date. Whether the petitioner's September conviction started to run at the same time as his April convictions is a question of statutory interpretation over which our review is plenary. *Carmel Hollow Associates Ltd. Partnership* v. *Bethlehem*, 269 Conn. 120, 129, 848 A.2d 451 (2004). We begin with the language of the governing statute. General Statutes § 53a-38 (b) provides in relevant part that "[a] definite sentence of imprisonment commences when the prisoner is received in the custody to which he was sentenced. . . . If the sentences run concurrently, the terms merge in and are satisfied by discharge of the term which has the longest term to run . . . ." When interpreting a statute, we look to its plain meaning.[10] General Statutes

---

[9] Under the rule in *Garlotte*, a habeas court has subject matter jurisdiction over a challenge to an expired conviction only if the petitioner can demonstrate that invalidation of the expired conviction "would advance the date of his eligibility for release from present incarceration." *Garlotte* v. *Fordice*, supra, 515 U.S. 47. In other words, in order for *Garlotte* to apply, a habeas petitioner's successful challenge to the expired conviction must have some appreciable effect on the amount of time that he spends in custody. This requirement is apparent from the way that the United States Supreme Court framed the issue presented in *Garlotte*: "The Courts of Appeals have divided over the question whether a person incarcerated under consecutive sentences remains in custody under a sentence that (1) has been completed in terms of prison time served, but (2) continues to postpone the prisoner's date of potential release." (Internal quotation marks omitted.) Id., 43.

[10] General Statutes § 1-2z provides: "The meaning of a statute shall, in the first instance, be ascertained from the text of the statute itself and its relationship to other statutes. If, after examining such text and considering such relationship, the meaning of such text is plain and unambiguous and

§ 1-2z. Section 53a-38 (b) provides on its face that a sentence "commences when the prisoner is received in the custody to which he was sentenced." Under the Appellate Court's interpretation, however, the petitioner was received into custody on the September sentence in April, before the sentence even existed. *Oliphant* v. *Commissioner of Correction*, supra, 83 Conn. App. 15–16. We cannot conclude that the legislature intended such a bizarre result. Accordingly, we conclude that the petitioner's September sentence began to run in *September*, because that is when he was "received in the custody to which he was sentenced."[11] General Statutes § 53a-38 (b). The respondent aptly describes this concept in his brief: "[W]hile it is true that concurrent sentences *imposed at the same time* begin to run at the same time, this does not mean that concurrent sentences which are imposed by separate courts at separate times for separate convictions nevertheless commence on the same date."[12] (Emphasis in original.)

---

does not yield absurd or unworkable results, extratextual evidence of the meaning of the statute shall not be considered."

[11] See also *Harris* v. *Commissioner of Correction*, 271 Conn. 808, 819, 860 A.2d 715 (2004) ("[t]he merger process does not alter the fact that concurrent sentences remain separate terms of imprisonment" [internal quotation marks omitted]).

The Appellate Court's interpretation of § 53a-38 (b) leads to other bizarre results. Under that court's interpretation, one who was sentenced to a term of twenty years in prison and was later sentenced to a concurrent term of six years in prison for a crime that was committed fifteen years into the first sentence, would be deemed to have completed the six year term for the later crime *before that crime was even committed.*

[12] The petitioner argues that the reasoning in *Ford* is flawed and that the case was "wrongly decided." Although we disagree with the court's determination in *Ford* that "concurrent sentences automatically begin to run at the same time"; *Ford* v. *Commissioner of Correction*, supra, 59 Conn. App. 829; this court recently affirmed the central conclusion in *Ford* that § 52-466 requires a petitioner to be in custody on the conviction under attack at the time the habeas petition was filed. See *Lebron* v. *Commissioner of Correction*, supra, 274 Conn. 530–31; *Ford* v. *Commissioner of Correction*, supra, 827–28.

Having concluded that the Appellate Court improperly determined that the petitioner began serving his September sentence in April, we address the merits of the petitioner's claim that, if his April sentences are reversed, his release date will be advanced. The petitioner contends that he would receive presentence confinement credit under General Statutes § 18-98d[13] if his

---

[13] General Statutes § 18-98d provides: "(a) (1) Any person who is confined to a community correctional center or a correctional institution for an offense committed on or after July 1, 1981, under a mittimus or because such person is unable to obtain bail or is denied bail shall, if subsequently imprisoned, earn a reduction of such person's sentence equal to the number of days which such person spent in such facility from the time such person was placed in presentence confinement to the time such person began serving the term of imprisonment imposed; provided (A) each day of presentence confinement shall be counted only once for the purpose of reducing all sentences imposed after such presentence confinement; and (B) the provisions of this section shall only apply to a person for whom the existence of a mittimus, an inability to obtain bail or the denial of bail is the sole reason for such person's presentence confinement, except that if a person is serving a term of imprisonment at the same time such person is in presentence confinement on another charge and the conviction for such imprisonment is reversed on appeal, such person shall be entitled, in any sentence subsequently imposed, to a reduction based on such presentence confinement in accordance with the provisions of this section. In the case of a fine, each day spent in such confinement prior to sentencing shall be credited against the sentence at a per diem rate equal to the average daily cost of incarceration as determined by the Commissioner of Correction.

"(2) (A) Any person convicted of any offense and sentenced on or after October 1, 2001, to a term of imprisonment who was confined to a police station or courthouse lockup in connection with such offense because such person was unable to obtain bail or was denied bail shall, if subsequently imprisoned, earn a reduction of such person's sentence in accordance with subdivision (1) of this subsection equal to the number of days which such person spent in such lockup, provided such person at the time of sentencing requests credit for such presentence confinement. Upon such request, the court shall indicate on the judgment mittimus the number of days such person spent in such presentence confinement.

"(B) Any person convicted of any offense and sentenced prior to October 1, 2001, to a term of imprisonment, who was confined in a correctional facility for such offense on October 1, 2001, shall be presumed to have been confined to a police station or courthouse lockup in connection with such offense because such person was unable to obtain bail or was denied bail and shall, unless otherwise ordered by a court, earn a reduction of such person's sentence in accordance with the provisions of subdivision (1) of this subsection of one day.

April convictions were overturned. We are unable to determine from the petitioner's brief, however, whether he is arguing that: (1) the time *served* under the April convictions, before the April and September sentences began to overlap, should be viewed as presentence confinement if the April convictions are overturned;[14] or (2) he was, in fact, under presentence confinement pursuant to the September sentence while serving the April sentences.[15]

This distinction is important. If, during the 129 days between the commencement of his April sentences and

"(C) The provisions of this subdivision shall not be applied so as to negate the requirement that a person convicted of a first violation of subsection (a) of section 14-227a and sentenced pursuant to subparagraph (B) (i) of subdivision (1) of subsection (h) of said section serve a term of imprisonment of at least forty-eight consecutive hours.

"(b) In addition to any reduction allowed under subsection (a) of this section, if such person obeys the rules of the facility such person may receive a good conduct reduction of any portion of a fine not remitted or sentence not suspended at the rate of ten days or five hundred dollars, as the case may be, for each thirty days of presentence confinement; provided any day spent in presentence confinement by a person who has more than one information pending against such person may not be counted more than once in computing a good conduct reduction under this subsection.

"(c) The Commissioner of Correction shall be responsible for ensuring that each person to whom the provisions of this section apply receives the correct reduction in such person's sentence; provided in no event shall credit be allowed under subsection (a) of this section in excess of the sentence actually imposed."

[14] The petitioner asserts that "[a]t the time of his second sentencing, [the petitioner] had been held in department of correction . . . custody since April 25, 1995, for 129 days . . . . By operation of General Statutes § 18-98d, those 129 days were not available as a presentence confinement credit against the seven year nonsuspended sentence, but rather were counted only as time served on the fifteen month sentence imposed on April 25." Here, the petitioner seems to argue that he would be entitled to a transfer of time served from one sentence to another.

[15] The petitioner also asserts that "if the habeas challenge was successful, and the fifteen month sentence were vacated, the time that [the petitioner] had been confined on the larceny charge while serving the fifteen month sentence would become time for which he was entitled to have a credit applied to the larceny sentence." Here, the petitioner seems to make the second argument.

the commencement of his September sentence, the petitioner was serving presentence confinement pursuant to the charge that resulted in the September conviction, he has a colorable argument that he would be entitled to credit for that time if his April convictions are overturned.[16] If, instead, he is arguing that, upon reversal, the time served under the April sentences should be credited toward his September sentence, he has not explained why that claim would not be precluded by our decision in *Payton* v. *Albert*, 209 Conn. 23, 31–32, 547 A.2d 1 (1988), overruled in part on other grounds, *Rivera* v. *Commissioner of Correction*, 254 Conn. 214, 255 n.44, 756 A.2d 1264 (2000). In *Payton*, this court held that inmates cannot transfer time served under one sentence to another sentence. *Payton* v. *Albert*, supra, 33–34. We explained that "[t]he principle that extra time served on a criminal sentence may not be banked is strongly rooted in the public policy that individuals should not be encouraged to commit crimes knowing they have a line of credit that can be applied against future sentences." (Internal quotation marks omitted.) Id., 34. The petitioner makes no explicit argument that *Payton* should not apply under the circumstances of the present case.

Neither the petitioner's brief nor the record in this case reveals when he was arrested and charged with the offense that led to the September sentence or whether he sought bond. Therefore, it is impossible to determine whether he was even under presentence

[16] See General Statutes § 18-98d (a) (1) (B) ("the provisions of this section shall only apply to a person for whom the existence of a mittimus, an inability to obtain bail or the denial of bail is the sole reason for such person's presentence confinement, except that if a person is serving a term of imprisonment at the same time such person is in presentence confinement on another charge and the conviction for such imprisonment is reversed on appeal, such person shall be entitled, in any sentence subsequently imposed, to a reduction based on such presentence confinement in accordance with the provisions of this section").

confinement for the September sentence while serving
the April sentences. Nor does the petitioner explain
why he is entitled to receive presentence confinement
credit under § 18-98d. Although he cites § 18-98d in his
brief, he does not point to the particular subsection of
that lengthy statute that supports his claim. Moreover,
the petitioner does not refer to any case law that sup-
ports his reading of the statute.[17] "[W]e are not required
to review issues that have been improperly presented
to this court through an inadequate brief. . . . Analy-
sis, rather than mere abstract assertion, is required in
order to avoid abandoning an issue by failure to brief
the issue properly." (Internal quotation marks omitted.)
*Ward* v. *Greene*, 267 Conn. 539, 546, 839 A.2d 1259

---

[17] Even if we were to construe the petitioner's claim as alleging that the petitioner was, in fact, under presentence confinement pursuant to the charge that resulted in the September conviction (September charge), the petitioner has failed to provide this court with an adequate record to review the merits of his claim. See Practice Book § 61-10 ("[i]t is the responsibility of the appellant to provide an adequate record for review"). We note that the Superior Court file for the September charge, docket number CR95-165310, necessarily contains the requisite facts for addressing the merits of the petitioner's claim, namely, the date of the petitioner's arrest for the September charge and whether he sought bond on the charge. It is well established that this court can take judicial notice of facts contained in the files of the Superior Court. See *Karp* v. *Urban Redevelopment Commission*, 162 Conn. 525, 527, 294 A.2d 633 (1972) ("[t]here is no question . . . con-cerning our power to take judicial notice of files of the Superior Court, whether the file is from the case at bar or otherwise"). The petitioner, however, has not asked us to do so in the present matter. Were we to take judicial notice of the facts contained in the Superior Court file, it appears from our review of the file that the petitioner was arrested on the September charge and released on a promise to appear on February 15, 1995. On April 25, 1995, the petitioner began serving his April sentences, but the promise to appear remained in effect as to the September charge. Consequently, even though the petitioner was incarcerated pursuant to the April convictions, he was not incarcerated pursuant to the September charge during the 129 days between the commencement of his April sentence and the commencement of his September sentence. Accordingly, even if the petitioner's April convic-tions were to be overturned, it appears that he is not entitled to presentence confinement credit pursuant to § 18-98d, and that his claim would fail on the merits.

(2004). Because we cannot discern from the record or the petitioner's brief whether a successful challenge to the expired conviction would affect the amount of time that the petitioner spends in custody, we decline to consider whether the *Garlotte* exception applies to the petitioner's case.[18]

The petitioner also argues, in effect, that the requirement in General Statutes § 18-7 that multiple terms of imprisonment "shall be construed as one continuous term" supports the proposition that concurrent sentences should be viewed as a continuous stream of custody under § 52-466. Under § 18-7, however, multiple terms are construed as a continuous term "for the purpose of estimating the amount of commutation which [the prisoner] may earn under the provisions of *this* section."[19] (Emphasis added.) This provision has no bearing on a habeas court's treatment of multiple sentences for the purposes of determining subject matter jurisdiction.

Finally, the petitioner argues that the habeas court improperly failed to recognize that "nonfrivolous arguments, including equitable tolling, existed on the jurisdictional question . . . ." He claims that he was entitled to an attorney to advocate that the court had jurisdiction and that he did not receive a meaningful opportunity to be heard. This argument is without merit. The petitioner had an attorney who analyzed his case and concluded that he had no nonfrivolous arguments. Although the petitioner may have asked his attorney to assert an equitable tolling defense on the jurisdictional

---

[18] In his brief, the respondent argues that Connecticut should not adopt *Garlotte* because there are significant differences between federal and state habeas review. Because the petitioner's argument is inadequately briefed, we need not reach this issue. We also decline to reach the issue of whether *Garlotte* applies to concurrent sentences in addition to consecutive sentences.

[19] Section 18-7 describes the warden's duties at the Connecticut correctional institution in Somers and his authority to punish and reward inmates.

question, she was not required to assert such a defense on his behalf if she believed that his claim was frivolous. See Rules of Professional Conduct 1.2, commentary;[20] *State* v. *Davis*, 199 Conn. 88, 95, 506 A.2d 86 (1986) (decisions of trial strategy and tactics rest with attorney); See also Rules of Professional Conduct 3.1 (barring attorneys from presenting frivolous claims).

In accordance with our recent decision in *Lebron*, we conclude that the Appellate Court properly determined that the habeas court lacked subject matter jurisdiction because the petitioner was not in custody on the conviction under attack when he filed his petition.

The judgment of the Appellate Court is affirmed.

In this opinion the other justices concurred.

---

[20] Rule 1.2 (a) of the Rules of Professional Conduct provides in relevant part: "A lawyer shall abide by a client's decisions concerning the objectives of representation . . . and shall consult with the client as to the means by which they are to be pursued. . . ." The commentary provides in relevant part: "[A] lawyer is not required to pursue objectives or employ means simply because a client may wish that the lawyer do so. . . ." Id., commentary.