RAFIU ABIMBOLA AJADI *v.* COMMISSIONER OF
CORRECTION
(SC 17497)

Sullivan, C. J., and Borden, Katz, Palmer and Vertefeuille, Js.*

---

* The listing of judges reflects their seniority status on this court as of the date of oral argument.

Argued March 8—officially released November 28, 2006

*Kent Drager*, senior assistant public defender, for the appellant (petitioner).

*Timothy J. Sugrue*, senior assistant state's attorney, with whom, on the brief, were *David I. Cohen*, state's attorney, and *Tiffany M. Lockshier*, assistant state's attorney, for the appellee (respondent).

*Opinion*

SULLIVAN, C. J. The petitioner, Rafiu Abimbola Ajadi,[1] appeals[2] following the denial of his petition for certification to appeal from the judgment of the habeas court dismissing his petition for a writ of habeas corpus. The petitioner claims on appeal that the habeas court: (1) committed plain error when the habeas judge failed to disqualify himself in violation of canon 3 (c) (1)

---

[1] The petitioner also is known as Rafiu Ajadi Abimbola, Rafiu Ajadi and Tajudeen Ajadi.

[2] The petitioner appealed from the judgment of the habeas court to the Appellate Court and, upon a joint motion by both parties, we transferred the appeal to this court pursuant to General Statutes § 51-199 (c) and Practice Book § 65-2.

(B) of the Code of Judicial Conduct;[3] (2) improperly dismissed his petition for a writ of habeas corpus for lack of subject matter jurisdiction because the petitioner was not in "custody" within the meaning of General Statutes § 52-466[4] when his habeas petition was filed; and (3) improperly failed to construe his petition for a writ of habeas corpus as a writ of error coram nobis. We affirm the judgment of the habeas court.

The record reveals the following relevant facts and procedural history. The petitioner is a citizen of Nigeria who entered the United States as a visitor in 1991, and became a lawful permanent resident on September 8, 1994. *Abimbola* v. *Ashcroft*, 378 F.3d 173, 174 (2d Cir. 2004), cert. denied sub nom. *Abimbola* v. *Gonzales*, 546 U.S. 1036, 126 S. Ct. 734, 163 L. Ed. 2d 577 (2005). On July 10, 1995, in the judicial district of Stamford-Norwalk, geographical area number one, located in the city of Stamford, the petitioner pleaded guilty to two counts of credit card fraud in violation of General Stat-

---

[3] Canon 3 of the Code of Judicial Conduct provides in relevant part: "The judicial duties of a judge take precedence over all the judge's other activities. Judicial duties include all the duties of that office prescribed by law. In the performance of these duties, the following standards apply:

* * *

"(c) Disqualification.

"(1) A judge should disqualify himself or herself in a proceeding in which the judge's impartiality might reasonably be questioned, including but not limited to instances where:

* * *

"(B) the judge served as lawyer in the matter in controversy, or a lawyer with whom the judge previously practiced law served during such association as a lawyer concerning the matter, or the judge or such lawyer has been a material witness concerning it . . . ."

[4] General Statutes § 52-466 (a) provides: "An application for a writ of habeas corpus shall be made to the superior court or to a judge thereof for the judicial district in which the person whose custody is in question is claimed to be illegally confined or deprived of his liberty, provided any application made by or on behalf of a person confined in the Connecticut Correctional Institution, Enfield-Medium or the Carl Robinson Correctional Institution, Enfield, shall be made to the superior court or a judge thereof for the judicial district of Tolland."

utes § 53a-128d (Stamford conviction). The petitioner received a total effective sentence of two years incarceration, execution suspended, and three years probation. Thereafter, on November 5, 1997, in the judicial district of Stamford-Norwalk, geographical area number twenty, located in the city of Norwalk, the petitioner pleaded guilty pursuant to the *Alford* doctrine[5] to one count of larceny in the third degree in violation of General Statutes § 53a-124. The petitioner was not sentenced at that time, and the matter was continued to December 2, 1997. When the petitioner failed to appear on December 2, the court ordered his rearrest. On May 7, 1999, the petitioner again pleaded guilty to larceny in the third degree and received a sentence of one year incarceration (Norwalk conviction). At the same proceeding, the petitioner also pleaded guilty to failure to appear in the first degree in violation of General Statutes § 53a-172, and was sentenced to one year incarceration to run concurrent to his larceny sentence.

Meanwhile, on February 24, 1997, the petitioner pleaded guilty in the Eastern District of New York to bank fraud in violation of 18 U.S.C. § 1344. *Abimbola* v. *Ashcroft*, supra, 378 F.3d 174. "In June 1999, based on the federal conviction, the Immigration and Nationalization Service [INS][6] served [the petitioner] with a notice to appear. The INS sought [the petitioner's] removal pursuant to § 237 (a) (2) (A) (iii) of the Immigration and Nationality Act [INA], 8 U.S.C. § 1227 (a) (2) (A) (iii), for an aggravated felony conviction as defined under INA § 101 (a) (43) (G) [and] 8 U.S.C. § 1101 (a) (43) (G) . . . ."[7] *Abimbola* v. *Ashcroft*, supra, 174. On

---

[5] See *North Carolina* v. *Alford*, 400 U.S. 25, 37, 91 S. Ct. 160, 27 L. Ed. 2d 162 (1970).

[6] On March 1, 2003, the INS merged into the newly formed Department of Homeland Security.

[7] Title 8 of the United States Code, § 1101 (a) (43), provides in relevant part: "The term 'aggravated felony' means . . . (G) a theft offense (including receipt of stolen property) or burglary offense for which the term of imprisonment [is] at least one year . . . ."

June 19, 2000, the commissioner of correction (commissioner), paroled the petitioner into the physical custody of the INS. On October 5, 2000, the petitioner, who had served fully the sentences for both his Stamford and Norwalk convictions, was discharged from parole.

Thereafter, on October 30, 2000, the INS amended the notice to appear by adding the petitioner's Norwalk conviction as a basis for his removal. Specifically, the INS claimed that larceny in the third degree in violation of § 53a-124 is an aggravated felony as defined by INA § 1101 (a) (43) (G). *Abimbola* v. *Ashcroft*, supra, 378 F.3d 174. Meanwhile, during July, 2000, a series of removal hearings had begun before an immigration judge in Oakdale, Louisiana. *Abimbola* v. *Ashcroft*, United States District Court, Docket No. 01-CV-5568, 2002 U.S. Dist. LEXIS 16219 (E.D.N.Y. August 28, 2002). During these hearings, it came to light that the petitioner's appeal of his federal bank fraud conviction was still pending. Accordingly, in December, 2000, the INS withdrew the charge of removability based on that conviction.[8] Id.; see also *Abimbola* v. *Ashcroft*, supra, 378 F.3d 174. On June 22, 2001, the immigration judge found

---

[8] On March 7, 2004, the petitioner filed a petition for a writ of habeas corpus in the United States District Court for the Eastern District of New York challenging the constitutionality of his federal bank fraud conviction. See *Abimbola* v. *United States*, United States District Court, Docket No. 04-CV-1518, 2005 U.S. Dist. LEXIS 7421 (E.D.N.Y. April 19, 2005). The District Court concluded that it lacked subject matter jurisdiction over the petition and, accordingly, rendered judgment of dismissal. Id. Specifically, the court concluded that the petitioner was not in custody on his bank fraud conviction because his sentence for that conviction had expired fully by the time the habeas petition had been filed. Id., citing *Maleng* v. *Cook*, 490 U.S. 488, 492, 109 S. Ct. 1923, 104 L. Ed. 2d 540 (1989) (per curiam). The court noted that the petitioner's detention by immigration authorities was unrelated to his federal conviction because "[t]he sole basis for the order of removal entered against him was his [Norwalk] conviction for third degree larceny." Id. Accordingly, the court concluded that, "even if the collateral immigration consequences stemming from a conviction could, as a matter of law, satisfy the 'in custody' requirement . . . [the] petitioner is not facing any such consequences" as a result of his bank fraud conviction. Id.

the petitioner removable as an aggravated felon based on his Norwalk conviction, and ordered him removed to Nigeria. *Abimbola* v. *Ashcroft*, supra, 378 F.3d 174. The board of immigration appeals dismissed the petitioner's appeal from the judgment of the immigration judge.[9] Id., 175. The petitioner currently is in the physical custody of the Department of Homeland Security; see footnote 6 of this opinion; and is being held at the Etoawh County Detention Center in Gadsen, Alabama, pending his removal.[10] *Abimbola* v. *Ridge*, United States District Court, Docket No. 3:04CV856, 2005 U.S. Dist. LEXIS 3699 (D. Conn. March 7, 2005).

[9] On August 16, 2001, the petitioner filed a petition for a writ of habeas corpus in the United States District Court for the Eastern District of New York challenging his detention, the removal proceedings and his order of removal. *Abimbola* v. *Ashcroft*, supra, 378 F.3d 175. The petitioner alleged that (1) larceny in the third degree in violation of § 53a-124 is not an aggravated felony as defined by 8 U.S.C. § 1101 (a) (43) (G), (2) his guilty plea pursuant to the *Alford* doctrine did not constitute a conviction pursuant to 8 U.S.C. § 1101 (a) (48) (A), (3) the immigration judge improperly denied his motion to change venue, and (4) he is entitled to various forms of discretionary relief. *Abimbola* v. *Ashcroft*, supra, Docket No. 01-CV-5568. After the District Court denied the petition, the petitioner appealed from the judgment of the District Court to the United States Court of Appeals for the Second Circuit, which affirmed the judgment of the District Court. *Abimbola* v. *Ashcroft*, supra, 378 F.3d 182.

The petitioner also filed a petition for a writ of habeas corpus in the United States District Court for the District of Connecticut challenging the constitutionality of his continued detention pursuant to *Zadvydas* v. *Davis*, 533 U.S. 678, 701, 121 S. Ct. 2491, 150 L. Ed. 2d 653 (2001) (alien who has entered United States lawfully "may be held in confinement until it has been determined that there is no significant likelihood of removal in the reasonably foreseeable future"). See *Abimbola* v. *Ridge*, United States District Court, Docket No. 3:04CV856, 2005 U.S. Dist. LEXIS 3699 (D. Conn. March 7, 2005). The District Court denied the petition because the petitioner's "own actions in seeking judicial stays of his removal (and not moving to dissolve them) are the reason for his continued detention and [the federal government's] failure to remove him sooner . . . ." Id. The Second Circuit Court of Appeals affirmed the judgment of the District Court. See *Abimbola* v. *Ridge*, United States Court of Appeals, Docket No. 05-2700-CV, 2006 U.S. App. LEXIS 12480 (2d Cir. May 18, 2006).

[10] In oral argument, the petitioner's counsel informed this court that, at the petitioner's request, the country of Nigeria has refused to issue to the

On April 20, 2004, the petitioner filed the present second amended petition for a writ of habeas corpus.[11] The petition alleges, in relevant part, that the petitioner received ineffective assistance of counsel in connection with both his Stamford and Norwalk convictions because his attorneys: (1) failed to research adequately the immigration consequences of his convictions; (2) failed to advise the petitioner that his convictions could lead to deportation; (3) failed to negotiate an agreement with the state to reduce the charges; (4) failed to advise the petitioner to decline to plead guilty and to take his case to trial; (5) failed to advise the petitioner, following the imposition of his sentence, that he might be entitled to withdraw his guilty plea pursuant to General Statutes § 54-1j because the trial court improperly had informed the petitioner of the immigration consequences of his plea; and (6) affirmatively misadvised the petitioner that his guilty pleas would not expose him to adverse immigration consequences.

The commissioner moved to dismiss the petition for lack of subject matter jurisdiction. Specifically, the commissioner claimed that the petitioner was not in " 'custody' " within the meaning of § 52-466 because the petitioner's sentences for his Stamford and Norwalk convictions had expired completely by the time he filed his petition for a writ of habeas corpus. The habeas court, *White, J.*, held a brief hearing on the commissioner's motion and, thereafter, dismissed the petition for lack of subject matter jurisdiction. The court concluded

petitioner the travel documents necessary for his readmission until the present appeal has been resolved.

[11] The petitioner first filed his petition for a writ of habeas corpus on March 13, 2002. Thereafter, the petitioner filed a first amended petition for a writ of habeas corpus on April 2, 2004, followed by a second amended petition on April 20, 2004. It is undisputed that the petitioner's second amended petition is the operative petition for purposes of the present appeal. Accordingly, all references to the petitioner's petition for a writ of habeas corpus pertain to the second amended petition, unless noted otherwise.

that "[t]he petition in this case was filed after the petitioner's underlying sentence expired. Because the petitioner was not in custody for the underlying conviction when he filed his petition, this court lacks jurisdiction to hear his claims. The petition is dismissed. See *Ford* v. *Commissioner of Correction*, 59 Conn. App. 823 [758 A.2d 853] (2000) and [Practice Book §] 23-29 (2)." The petitioner subsequently petitioned for certification to appeal from the judgment of the habeas court. The habeas court denied the petition for certification to appeal, and this appeal followed.

During the pendency of the present appeal, the petitioner, who was not present at the hearing on the motion to dismiss, discovered the identity of the habeas judge.[12] The petitioner thereafter informed his appellate counsel that the habeas judge previously had served as his attorney with respect to plea negotiations for his Norwalk conviction.[13] It is undisputed that neither Judge White, the petitioner nor counsel for the parties previously realized that Judge White formerly had represented the

---

[12] The petitioner's counsel informed this court that the petitioner "became aware of Judge White's role in the habeas case when [his counsel] on appeal sent him a copy of the transcript of the July 14, 2004 oral argument on the motion to dismiss. The petitioner replied by asking [appellate counsel] whether Judge Gary White was the same Gary White who had been a public defender in Norwalk in 1995 and pointed out that if he was the same person then he had represented the petitioner for a time in the Norwalk case at issue in the habeas."

[13] The petitioner asks this court to take judicial notice of the transcript of an arraignment proceeding that took place on September 22, 1995. "It is well established that this court can take judicial notice of facts contained in the files of the Superior Court. See *Karp* v. *Urban Redevelopment Commission*, 162 Conn. 525, 527, 294 A.2d 633 (1972) ('[t]here is no question . . . concerning our power to take judicial notice of files of the Superior Court, whether the file is from the case at bar or otherwise')." *Oliphant* v. *Commissioner of Correction*, 274 Conn. 563, 579 n.17, 877 A.2d 761 (2005). Moreover, the commissioner does not object to our doing so. Accordingly, we take judicial notice of the following facts. On September 22, 1995, Judge White, who was then an assistant public defender in the judicial district of Stamford-Norwalk, geographical area number twenty, appeared on behalf of the petitioner at an arraignment proceeding on the third degree larceny

petitioner with respect to one of the criminal convictions underlying the petition for a writ of habeas corpus.

On appeal, the petitioner claims that Judge White improperly failed to disqualify himself in violation of canon 3 (c) (1) (B) of the Code of Judicial Conduct and Practice Book § 1-22 (a)[14] because he had " 'served as [a] lawyer in the matter in controversy . . . .' " The petitioner further claims that Judge White's improper participation in the present case constitutes plain error that neither can be waived nor remitted by the parties. Alternatively, if this court reaches the propriety of the habeas court's rulings, the petitioner claims that the habeas court: (1) abused its discretion in denying his petition for certification to appeal because "the purely legal issues presented [therein were] nonfrivolous matters of first impression in Connecticut and [were] matters about which there is at least a split of authority in other jurisdictions"; and (2) improperly concluded that the petitioner was not in custody when he filed his habeas petition. With respect to the latter claim, the petitioner contends that he was in custody pursuant to *Garlotte* v. *Fordice*, 515 U.S. 39, 45–46, 115 S. Ct. 1948, 132 L. Ed. 2d 36 (1995), because his current confinement is part of a continuous stream of custody, and reversal of his underlying criminal conviction will advance his release date. Alternatively, the petitioner contends that he was in custody pursuant to *Lackawanna County District Attorney* v. *Coss*, 532 U.S. 394, 121 S. Ct. 1567, 149 L. Ed. 2d 608 (2001), because the present case is one of those " 'rare cases in which no channel of review

charge that led to the petitioner's Norwalk conviction. White informed the trial court that "[t]he state's made an offer, and I told [the petitioner] about the offer. He's asking for [two] weeks to think about it." The trial court granted a continuance to October 6, 1995.

[14] Practice Book § 1-22 (a) provides in relevant part: "A judicial authority shall, upon motion of either party or upon its own motion, be disqualified from acting in a matter if such judicial authority is disqualified from acting therein pursuant to Canon 3 (c) of the Code of Judicial Conduct . . . ."

was actually available to a [petitioner] with respect to a prior conviction, due to no fault of his own.' *Daniels* [v. *United States*, 532 U.S. 374, 383–84, 121 S. Ct. 1578, 149 L. Ed. 2d 590 (2001)]." If we conclude, however, that the petitioner was not in custody when he filed his habeas petition, the petitioner claims that the habeas court improperly failed to construe his petition for a writ of habeas corpus as a writ of error coram nobis.

The commissioner concedes that canon 3 (c) (1) (B) required Judge White to disqualify himself from the present case. The commissioner claims, however, that the petitioner's failure to raise Judge White's disqualification during the hearing on the commissioner's motion to dismiss is the functional equivalent of " 'consent in open court' " under General Statutes § 51-39 (c).[15] Alternatively, the commissioner claims that Judge White's failure to disqualify himself does not constitute plain error. If we conclude, however, that it does constitute plain error, the commissioner contends that nonetheless we are "independently obligated" to determine whether the habeas court lacked subject matter jurisdiction over the petitioner's habeas petition. With respect to the jurisdiction of the habeas court, the commissioner claims that the habeas court lacked subject matter jurisdiction pursuant to *Lebron* v. *Commissioner of Correction*, 274 Conn. 507, 530, 876 A.2d 1178 (2005), because the petitioner had served fully the sentences for both his Stamford and Norwalk convictions before he filed his habeas petition and, therefore, he was not in "custody" within the meaning of § 52-466. Lastly, the commissioner claims that the petitioner's habeas petition does not fulfill the requirements of the writ of error coram nobis.

---

[15] General Statutes § 51-39 (c) provides: "When any judge or family support magistrate is disqualified to act in any proceeding before him, he may act if the parties thereto consent in open court."

We conclude that Judge White's failure to disqualify himself in violation of canon 3 (c) (1) (B) of the Code of Judicial Conduct and Practice Book § 1-22 (a) constitutes plain error. Despite the existence of plain error, we nonetheless review the commissioner's claim that the habeas court lacked subject matter jurisdiction over the petitioner's habeas petition. After conducting an independent review of the jurisdiction of the habeas court, we conclude that the habeas court lacked subject matter jurisdiction because the petitioner was not in custody when he filed his petition. Lastly, we conclude that the petitioner's writ of error coram nobis claim is not preserved for our review. Accordingly, we affirm the judgment of the habeas court.

I

The petitioner first claims that it was plain error for Judge White to preside over his petition for a writ of habeas corpus and his petition for certification to appeal[16] because canon 3 (c) (1) (B) of the Code of Judicial Conduct and Practice Book § 1-22 (a) required Judge White to disqualify himself from the present case.[17] We agree.

---

[16] Alternatively, the petitioner claims that the habeas court abused its discretion in denying his petition for certification to appeal because the petitioner's custody status when he filed his habeas petition is debatable among jurists of reason. See *Rivera* v. *Commissioner of Correction*, 254 Conn. 214, 226–27, 756 A.2d 1264 (2000) (to establish that habeas court abused discretion in denying petition for certification to appeal, appellant must show that issues are debatable among jurists of reason, court could resolve issues in different manner or questions are adequate to receive encouragement to proceed further). Because we agree with the petitioner that Judge White's failure to disqualify himself constitutes plain error, we do not reach this claim.

[17] We recognize that, ordinarily, this court begins its analysis with the trial court's alleged lack of subject matter jurisdiction. See *Gurliacci* v. *Mayer*, 218 Conn. 531, 545, 590 A.2d 914 (1991) ("[i]t is axiomatic that once the issue of subject matter jurisdiction is raised, it must be immediately acted upon by the court"). In the present case, however, the jurisdictional issue was raised and ruled on in the habeas court by a judge who, according to the petitioner, lacked one of the essential elements necessary for a fair exercise of judicial authority, namely, the appearance of impartiality. See

We note that the petitioner did not preserve his disqualification claim in the habeas court and, therefore, seeks to prevail on this claim pursuant to the plain error doctrine. "[T]he plain error doctrine . . . has been codified at Practice Book § 60-5,[18] which provides in relevant part that [t]he court may reverse or modify the decision of the trial court if it determines . . . that the decision is . . . erroneous in law. . . . The plain error doctrine is not . . . a rule of reviewability. It is a rule of reversibility. That is, it is a doctrine that this court invokes in order to rectify a trial court ruling that, although either not properly preserved or never raised at all in the trial court, nonetheless requires reversal of the trial court's judgment, for reasons of policy. . . . The plain error doctrine is reserved for truly extraordinary situations where the existence of the error is so obvious that it affects the fairness and integrity of and public confidence in the judicial proceedings. . . . A party cannot prevail under plain error unless it has demonstrated that the failure to grant relief will result in manifest injustice." (Internal quotation marks omitted.) *State* v. *D'Antonio*, 274 Conn. 658, 669, 877 A.2d 696 (2005). We conclude that the plain error doctrine is applicable to the present case because a habeas judge's alleged improper failure to disqualify himself in violation of the Code of Judicial Conduct and our rules of practice "strikes at the very core of judicial integrity and tends to undermine public confidence in the established judiciary." (Internal quotation marks omitted.) *Cameron* v. *Cameron*, 187 Conn. 163, 168, 444 A.2d 915

*State* v. *Webb*, 238 Conn. 389, 460–61, 680 A.2d 147 (1996), aff'd after remand, 252 Conn. 128, 750 A.2d 448, cert. denied, 531 U.S. 835, 121 S. Ct. 93, 148 L. Ed. 2d 53 (2000). Because this claim affects the fairness, integrity and public confidence in judicial proceedings, we begin our analysis with the alleged failure of the habeas judge to disqualify himself from the present case.

[18] Practice Book § 60-5 provides in relevant part: "The court shall not be bound to consider a claim unless it was distinctly raised at the trial or arose subsequent to the trial. The court may in the interests of justice notice plain error not brought to the attention of the trial court. . . ."

(1982) (reviewing unpreserved claim of judicial bias pursuant to plain error doctrine); see also *State* v. *D'Antonio*, supra, 670–74 (plain error review of unpreserved claim of judicial disqualification).

We begin our analysis with the Code of Judicial Conduct and our rules of practice. Canon 3 (c) (1) (B) of the Code of Judicial Conduct provides in relevant part: "A judge should disqualify himself or herself in a proceeding in which the judge's impartiality might reasonably be questioned, including but not limited to instances where . . . the judge served as lawyer in the matter in controversy . . . ." Practice Book § 1-22 (a) provides in relevant part: "A judicial authority shall, upon motion of either party or upon its own motion, be disqualified from acting in a matter if such judicial authority is disqualified from acting therein pursuant to Canon 3 (c) of the Code of Judicial Conduct . . . ." Pursuant to the plain language of canon 3 (c) (1) (B), a judge's impartiality reasonably might be questioned if the judge previously had served as a lawyer in the "matter in controversy . . . ." We previously have observed that canon 3 of the Code of Judicial Conduct "requires a judge to disqualify himself or herself in a proceeding in which the judge's impartiality might reasonably be questioned. The reasonableness standard is an objective one. Thus, the question is not only whether the particular judge is, in fact, impartial but whether a reasonable person would question the judge's impartiality on the basis of all the circumstances." (Internal quotation marks omitted.) *State* v. *Webb*, 238 Conn. 389, 460, 680 A.2d 147 (1996), aff'd after remand, 252 Conn. 128, 750 A.2d 448, cert. denied, 531 U.S. 835, 121 S. Ct. 93, 148 L. Ed. 2d 53 (2000). Moreover, it is well established that "[e]ven in the absence of actual bias, a judge must disqualify himself in any proceeding in which his impartiality might reasonably be questioned, because the appearance and the existence of impartiality are

both essential elements of a fair exercise of judicial authority." (Internal quotation marks omitted.) Id., 460–61; see also R. Flamm, Judicial Disqualification (1996) § 5.4.1, p. 150 ("Judicial decisions rendered under circumstances suggesting bias or favoritism tend to breed skepticism, undermine the integrity of the courts, and generally thwart the principles upon which our jurisprudential system is based. Since an appearance of bias may be just as damaging to public confidence in the administration of justice as the actual presence of bias, acts or conduct giving the appearance of bias should generally be avoided in the same way as acts or conduct that inexorably bespeak partiality.").

In the present case, the commissioner does not dispute that the convictions underlying the petition for a writ of habeas corpus, namely, the Stamford and Norwalk convictions, constitute the "matter in controversy." See, e.g., *Mixon* v. *United States*, 620 F.2d 486 (5th Cir. 1980) (per curiam) (habeas judge who reviewed petition for writ of habeas corpus after he had prosecuted petitioner in underlying criminal conviction was required to disqualify himself from habeas proceeding); *People* v. *Vasquez*, 307 Ill. App. 3d 670, 673–74, 718 N.E.2d 356 (1999) (same), leave to appeal denied, 187 Ill. 2d 589, 724 N.E.2d 1274 (2000); J. Shaman, S. Lubet & J. Alfini, Judicial Conduct and Ethics (3d Ed. 2000) § 4.16, p. 142 ("[o]bviously, a judge would be disqualified from presiding over a case involving the same matter or arising from the same fact situation in which he or she previously served as an attorney"). Additionally, the commissioner concedes that Judge White formerly had represented the petitioner with respect to the charges that led to the petitioner's Norwalk conviction. Lastly, the commissioner concedes that canon 3 (c) (1) (B) and Practice Book § 1-22 (a) required Judge White to disqualify himself sua sponte from the present case. In light of these concessions,

we conclude that Judge White improperly failed to disqualify himself because he previously had served as a lawyer in the matter in controversy.

We further conclude that Judge White's failure to disqualify himself constitutes plain error. Judge White presided over a habeas petition that initially had alleged, in relevant part, that his own prior representation of the petitioner was so deficient that it deprived the petitioner of counsel in violation of the sixth amendment to the federal constitution.[19] Because a reasonable person would question Judge White's impartiality under the present circumstances, we conclude that his participation in the present case resulted in plain error. See *State* v. *D'Antonio*, supra, 274 Conn. 681 ("before reversing a judgment of conviction and a concomitant sentence, we must . . . review the record as a whole for evidence of actual or *apparent prejudice* to the defendant" [emphasis added]).

We emphasize that the petitioner does not claim, and nothing in the record suggests, that Judge White actually harbored a personal bias or prejudice against the petitioner. Indeed, the parties agree that, at the time of the habeas proceedings, Judge White was unaware of his former representation of the petitioner. Regardless, because the appearance of impartiality is one of the "essential elements of a fair exercise of judicial authority"; (internal quotation marks omitted) *State* v. *Webb*,

---

[19] See, e.g., *Ledbetter* v. *Commissioner of Correction*, 275 Conn. 451, 458, 880 A.2d 160 (2005) ("A claim of ineffective assistance of counsel consists of two components: a performance prong and a prejudice prong. To satisfy the performance prong, a claimant must demonstrate that counsel made errors so serious that counsel was not functioning as the counsel guaranteed . . . by the Sixth Amendment. *Strickland* v. *Washington*, [466 U.S. 668, 687, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984)]. To satisfy the prejudice prong, a claimant must demonstrate that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." [Internal quotation marks omitted.]), cert. denied sub nom. *Ledbetter* v. *Lantz*, 546 U.S. 1187, 126 S. Ct. 1368, 164 L. Ed. 2d 77 (2006).

supra, 238 Conn. 461; we conclude that plain error exists.

The commissioner claims, however, that the petitioner implicitly had consented to Judge White's improper adjudication of the present case pursuant to § 51-39 (c). We reject this claim. Section 51-39 (c) provides: "When any judge or family support magistrate is disqualified to act in any proceeding before him, he may act if the parties thereto consent in open court." "It is well settled that, in both civil and criminal cases, the failure to raise the issue of [judicial] disqualification either before or during the trial, can be construed as the functional equivalent of consent in open court . . . ." (Internal quotation marks omitted.) *State* v. *D'Antonio*, supra, 274 Conn. 671. This is because "we will not permit parties to anticipate a favorable decision, reserving a right to impeach it or set it aside if it happens to be against them, *for a cause which was well known to them before or during the trial.* We have repeatedly indicated our disfavor with the failure, whether because of a mistake of law, inattention or design, to object to errors occurring in the course of a trial until it is too late for them to be corrected, and thereafter, if the outcome of the trial proves unsatisfactory, with the assignment of such errors as grounds of appeal." (Emphasis added; internal quotation marks omitted.) *Timm* v. *Timm*, 195 Conn. 202, 205, 487 A.2d 191 (1985).

Thus, to consent in open court, the parties must know or have reason to know of the judge's participation in the trial proceedings and the facts that require the judge to disqualify himself, but, nonetheless, fail to object in a timely manner.[20] See *State* v. *D'Antonio*, supra, 274

---

[20] The parties need not know, however, of the *law* that mandates the judicial disqualification. See *State* v. *DeGennaro*, 147 Conn. 296, 303–304, 160 A.2d 480 (parties consented to participation of trial judge even though trial counsel had no knowledge of statute requiring trial judge's disqualification), cert. denied, 364 U.S. 873, 81 S. Ct. 116, 5 L. Ed. 2d 95 (1960).

Conn. 671 (judge who had presided over plea negotiations also presided over trial); *State* v. *Fitzgerald*, 257 Conn. 106, 116–17, 777 A.2d 580 (2001) (judge informed of part B information in open court in violation of Practice Book § 37-11); *Timm* v. *Timm*, supra, 195 Conn. 203–205 (judge who had presided over settlement conferences also presided over trial); *Krattenstein* v. *G. Fox & Co.*, 155 Conn. 609, 614–15, 236 A.2d 466 (1967) (same); *State* v. *Kohlfuss*, 152 Conn. 625, 628–31, 211 A.2d 143 (1965) (judge who had served on defendant's sentence review committee also presided over defendant's trial on separate criminal charges; defendant apparently had recognized disqualified judge but did not raise objection during trial); *State* v. *DeGennaro*, 147 Conn. 296, 303–304, 160 A.2d 480 (judge who had presided over defendant's first trial also presided over defendant's second trial), cert. denied, 364 U.S. 873, 81 S. Ct. 116, 5 L. Ed. 2d 95 (1960).

In the present case, the petitioner was not present at the hearing on the commissioner's motion to dismiss and did not become aware of the identity of the habeas judge until *after* the habeas proceedings had concluded completely. Moreover, the petitioner's habeas counsel did not know, nor did he have any reason to know, of Judge White's prior representation of the petitioner until *after* the habeas proceedings had concluded completely. See footnote 12 of this opinion. On the basis of this record, we conclude that the petitioner did not consent in open court pursuant to § 51-39 (c).[21]

## II

The commissioner claims that, despite the existence of plain error in the habeas proceedings, we independently are obligated to determine whether the habeas

---

[21] In light of our conclusion, we do not reach the petitioner's claim that judicial disqualification under canon 3 (c) (1) (B) is neither waivable nor remittable, even with the consent of the parties.

court lacked subject matter jurisdiction over the petitioner's petition for a writ of habeas corpus. The commissioner further claims that the habeas court lacked jurisdiction under *Lebron* v. *Commissioner of Correction*, supra, 274 Conn. 530, because the petitioner was not in "custody" within the meaning of § 52-466 when he filed his habeas petition. The petitioner responds that, in light of the plain error in the habeas proceedings, this court lacks jurisdiction to consider the jurisdiction of the habeas court. If this court reaches the merits of the commissioner's jurisdictional claim, however, the petitioner claims that he was in custody when he filed his habeas petition and, therefore, jurisdiction existed in the habeas court. Alternatively, if this court concludes that the habeas court lacked subject matter jurisdiction, the petitioner claims that the habeas court improperly failed to construe his habeas petition as a writ of error coram nobis, a pleading over which the habeas court properly could have exercised jurisdiction.

In light of the unique nature of subject matter jurisdiction, we conclude that we independently are obligated to address the commissioner's jurisdictional claim. After conducting an independent review of the record and the case law concerning the custody requirement in § 52-466, we conclude that the petitioner was not in custody when his habeas petition was filed and, therefore, the habeas court lacked subject matter jurisdiction. Moreover, because the petitioner's writ of error coram nobis claim was not raised in the habeas court, we conclude that it is not preserved for our review.

As a preliminary matter, we set forth the appropriate standard of review. "We have long held that because [a] determination regarding a trial court's subject matter jurisdiction is a question of law, our review is plenary. . . . Moreover, [i]t is a fundamental rule that a court may raise and review the issue of subject matter juris-

diction at any time. . . . Subject matter jurisdiction involves the authority of the court to adjudicate the type of controversy presented by the action before it. . . . [A] court lacks discretion to consider the merits of a case over which it is without jurisdiction . . . . The subject matter jurisdiction requirement may not be waived by any party, and also may be raised by a party, or by the court sua sponte, at any stage of the proceedings, including on appeal." (Citations omitted; internal quotation marks omitted.) *Peters* v. *Dept. of Social Services*, 273 Conn. 434, 441, 870 A.2d 448 (2005); see also *Johnson* v. *Commissioner of Correction*, 258 Conn. 804, 813, 786 A.2d 1091 (2002) ("Once the question of lack of jurisdiction of a court is raised, [it] must be disposed of no matter in what form it is presented. . . . The court must fully resolve it before proceeding further with the case. . . . Whenever a court finds that it has no jurisdiction, it must dismiss the case, without regard to previous rulings." [Internal quotation marks omitted.]). "[W]here the court rendering the judgment lacks jurisdiction of the subject matter the judgment itself is void." (Internal quotation marks omitted.) *Commissioner of Transportation* v. *Rocky Mountain, LLC*, 277 Conn. 696, 725, 894 A.2d 259 (2006). Indeed, "[i]t is axiomatic that once the issue of subject matter jurisdiction is raised, it must be immediately acted upon by the court." *Gurliacci* v. *Mayer*, 218 Conn. 531, 545, 590 A.2d 914 (1991).

A

We first address the petitioner's claim that, in light of our conclusion in part I of this opinion that it was plain error for the habeas judge to fail to disqualify himself from the present case, this court lacks jurisdiction to consider the jurisdiction of the habeas court. In support of this claim, the petitioner relies on General Statutes § 51-183d, which provides in relevant part that, "[i]f a judge acts in any legal proceeding in which he

is disqualified, the proceeding shall not by reason thereof be void, but such action shall constitute an irregularity of which advantage may be taken by appeal or, where no appeal lies, by proceedings in error." We reject this claim. We previously have observed that § 51-183d plainly provides that "proceedings before a disqualified judge are not void but merely *voidable*." (Emphasis added.) *State* v. *Kohlfuss*, supra, 152 Conn. 630; see also General Statutes § 51-39 (c) (parties may waive judge's disqualification). "A voidable judgment is a judgment entered erroneously by a court having jurisdiction." 46 Am. Jur. 2d, Judgments § 28 (2006). Although a voidable judgment may be reversed on appeal because "an action by a court is contrary to a statute, constitutional provision, or rule of civil or appellate procedure," the judgment itself is valid and binding on all parties. Id.; see also Restatement (Second), Judgments § 1 (1982) (judgment is valid if court had subject matter jurisdiction, personal jurisdiction and adequate notice was afforded to all parties). Although the habeas judge's failure to disqualify himself constitutes plain error, the judgment rendered by the habeas court was valid and binding. Because a valid final judgment exists, we have jurisdiction over the present appeal.[22]

Having determined that this court has appellate jurisdiction to consider the commissioner's jurisdictional

---

[22] Regardless, even if the judgment rendered by the habeas court was void, we note that we have jurisdiction over the present appeal pursuant to General Statutes § 52-263, which provides that, "[u]pon the trial of all matters of fact in any cause or action in the Superior Court, whether to the court or jury, or before any judge thereof when the jurisdiction of any action or proceeding is vested in him, if either party is aggrieved by the decision of the court or judge upon any question or questions of law arising in the trial . . . he may appeal to the court having jurisdiction from the final judgment of the court or of such judge . . . ." See also *Long* v. *Zoning Commission*, 133 Conn. 248, 249, 50 A.2d 172 (1946) ("a judgment dismissing an action for want of jurisdiction is a 'final judgment' and any party aggrieved may properly appeal to this court").

claim, we next address whether it is appropriate for us to do so. As previously explained, "[s]ubject matter jurisdiction involves the authority of the court to adjudicate the type of controversy presented by the action before it"; (internal quotation marks omitted) *Peters* v. *Dept. of Social Services*, supra, 273 Conn. 441; and a judgment rendered without subject matter jurisdiction is void. See *Commissioner of Transportation* v. *Rocky Mountain, LLC*, supra, 277 Conn. 725. Further, it is well established that a reviewing court properly may address jurisdictional claims that neither were raised nor ruled on in the trial court. See, e.g., *State* v. *Commins*, 276 Conn. 503, 512, 886 A.2d 824 (2005) (reviewing jurisdictional claim raised by defendant for first time on appeal); *Peters* v. *Dept. of Social Services*, supra, 440 n.8 (reviewing jurisdictional claim raised by Appellate Court sua sponte). Indeed, "[o]nce the question of lack of jurisdiction of a court is raised, [it] *must be disposed of* no matter in what form it is presented. . . . *The court must fully resolve it before proceeding further with the case.*" (Emphasis added; internal quotation marks omitted.) *Johnson* v. *Commissioner of Correction*, supra, 258 Conn. 813 (reviewing jurisdictional claim raised by respondent for first time on appeal). In the present case, the jurisdictional facts are not in dispute,[23] and the parties fully have briefed and argued the merits of the jurisdictional issue. Under such circumstances, we conclude that we are obligated to determine whether the habeas court lacked subject matter jurisdiction.[24] We recognize, however, that the habeas

---

[23] "A jurisdictional fact is a fact that will permit a court to find jurisdiction. . . . Specifically, with regard to subject matter jurisdiction, jurisdictional facts are [f]acts showing that the matter involved in a suit constitutes a subject-matter consigned by law to the jurisdiction of that court . . . ." (Citation omitted; internal quotation marks omitted.) *Del Toro* v. *Stamford*, 270 Conn. 532, 543 n.9, 853 A.2d 95 (2004).

[24] The petitioner claims that it is improper for this court to review the jurisdiction of the habeas court because a determination regarding subject matter jurisdiction "must be made in the first instance by a non-disqualified judge in the [habeas] court." We agree with the petitioner that a determina-

court also addressed the jurisdictional question, and that plain error existed in the habeas proceedings. See part I of this opinion. As such, we do not review the propriety of the habeas court's factual findings or legal conclusions, but, instead, conduct an independent review of the record to determine whether the habeas court lacked subject matter jurisdiction in the present case. Essentially, we treat the commissioner's claim as if it had been raised for the first time on appeal before this court.[25]

B

We next address the jurisdiction of the habeas court. The commissioner claims that, because the petitioner's Stamford and Norwalk convictions had expired completely by the time the petitioner's habeas petition was filed, the petitioner was not in custody on those convictions as required by § 52-466. The petitioner claims, however, that he was in custody on his Stamford and Norwalk convictions when he filed his habeas petition because, pursuant to *Garlotte* v. *Fordice*, supra, 515 U.S. 45–46, the petitioner's current confinement is part of a continuous stream of custody and reversal of his Stamford and Norwalk convictions would advance his release date. Alternatively, the petitioner claims that, under *Lackawanna County District Attorney* v. *Coss*, supra, 532 U.S. 405, he was in custody because "no channel of review was actually available to [the peti-

tion regarding subject matter jurisdiction must be made in the first instance by an impartial judge or judges, but we disagree with the petitioner that this court, as an appellate tribunal, is incapable of making such a determination.

[25] We clarify that our review of the commissioner's jurisdictional claim is not commensurate with harmless error review. Indeed, in part I of this opinion, we conclude that the habeas judge's improper failure to disqualify himself defies harmless error review. See *State* v. *Latour*, 276 Conn. 399, 411, 886 A.2d 404 (2005) ("When the error undermines the structural integrity of the tribunal, no review for harmless error or prejudice to the defendant need be made. Such an error can never be harmless and automatically calls for reversal and a new trial." [Internal quotation marks omitted.]).

tioner] with respect to [his] prior conviction, due to no fault of his own." We agree with the commissioner.

Section 52-466 (a) provides in relevant part that "[a]n application for a writ of habeas corpus shall be made to the superior court or to a judge thereof for the judicial district in which the person whose *custody is in question is claimed to be illegally confined or deprived of his liberty* . . . ." (Emphasis added.) In *Lebron* v. *Commissioner of Correction*, supra, 274 Conn. 526, we concluded that the custody requirement in § 52-466 is jurisdictional in nature because the "history and purpose of the writ of habeas corpus establish that the habeas court lacks the power to act on a habeas petition absent the petitioner's allegedly unlawful custody."

In *Lebron*, the petitioner, who was incarcerated pursuant to a 1999 state conviction, filed an amended petition for a writ of habeas corpus challenging an expired 1992 state conviction. Id., 509–10. The petition challenged the 1992 conviction on grounds of actual innocence and ineffective assistance of counsel. Id., 510. The petition further alleged that the 1992 conviction enhanced the petitioner's sentence and inmate security classification for the 1999 conviction. Id. The habeas court dismissed the petition for lack of subject matter jurisdiction, reasoning that "the petitioner no longer was in custody under the 1992 conviction because the sentence imposed for that conviction had been served fully by the time the habeas petition was filed." (Internal quotation marks omitted.) Id., 511.

We concluded that the habeas court properly had dismissed the petition for lack of subject matter jurisdiction. Id., 526–30. Specifically, we concluded that the petitioner was not in " 'custody' " on the 1992 conviction because that conviction had expired fully by the time the petitioner's habeas petition had been filed. Id., 530. We further concluded that the collateral consequences

of the expired 1992 conviction, namely, the enhancement of the petitioner's sentence and security classification for the 1999 conviction, were insufficient to render the petitioner in custody on that conviction. Id., 530–31. To conclude otherwise, we noted, would "[stretch] the language [of § 52-466] too far. . . . Although the custody requirement has been construed liberally[26] . . . it has never been extended to the situation where a habeas petitioner *suffers no present restraint from a conviction.* . . . Such an interpretation would mean that a petitioner whose sentence has completely expired could nonetheless challenge the conviction for which it was imposed at any time through a state petition for habeas corpus and would read the in custody requirement out of the statute. . . . To the extent that the petitioner in the present matter claims that the alleged enhancement of his current sentence and security classification has deprived [him] of his liberty under § 52-466 and has rendered him in custody, his loss of liberty

---

[26] In *Lebron*, the petitioner claimed that § 52-466 is broader than the federal habeas statutes because it permits an individual who has been "deprived of his liberty" to file a petition for a writ of habeas corpus. *Lebron* v. *Commissioner of Correction*, supra, 274 Conn. 529 n.17; compare General Statutes § 52-466 with 28 U.S.C. §§ 2241 and 2254. We rejected this claim. First, we observed that, "[i]t is well established that, in determining the scope of the writ of habeas corpus under state law, we look to the scope of the writ under federal law" because "both state and federal law governing the writ derive from the English common law." *Lebron* v. *Commissioner of Correction*, supra, 529 n.17. Second, we noted that, under federal law, the term "custody" is "synonymous with restraints of liberty; R. Sokol, Federal Habeas Corpus (2d Ed. 1969) § 6.1, p. 66; including those restraints in place when the petitioner is on parole; *Jones* v. *Cunningham*, 371 U.S. 236, 243, 83 S. Ct. 373, 9 L. Ed. 2d 285 (1963), and when he is released on his own recognizance. *Hensley* v. *Municipal Court, San Jose-Milpitas Judicial District*, 411 U.S. 345, 348–49, 93 S. Ct. 1571, 36 L. Ed. 2d 294 (1973)." (Internal quotation marks omitted.) *Lebron* v. *Commissioner of Correction*, supra, 529 n.17. Accordingly, we concluded that the legislature's use of the phrase " 'deprived of his liberty' " in § 52-466 was not intended "to make the state writ of habeas corpus broader than its federal counterpart," but, rather, "was merely intended to recognize that, historically, actual physical detention is not a jurisdictional prerequisite for bringing a writ of habeas corpus." Id.

stems solely from his current conviction." (Citations omitted; emphasis in original; internal quotation marks omitted.) Id., citing *Maleng* v. *Cook*, 490 U.S. 488, 491–93, 109 S. Ct. 1923, 104 L. Ed. 2d 540 (1989) (per curiam).

In the present case, it is undisputed that the petitioner's Stamford and Norwalk convictions had expired completely by the time the petitioner had filed his petition for a writ of habeas corpus.[27] Moreover, it is well established that deportation is a collateral consequence of a criminal conviction.[28] See *State* v. *Malcolm*, 257 Conn. 653, 663 and n.12, 778 A.2d 134 (2001) (deportation is collateral consequence of guilty plea); see also

---

[27] The petitioner's Stamford and Norwalk convictions expired on October 5, 2000, but the petitioner did not file his first petition for a writ of habeas corpus until March 13, 2002. See footnote 11 of this opinion.

[28] We recognize that various jurisdictions have reevaluated whether deportation is a collateral consequence of a criminal conviction in light of recent amendments to the Immigration and Nationality Act (INA), 8 U.S.C. § 1101 et seq., which render deportation virtually automatic for a noncitizen defendant convicted of an "aggravated felony" as defined by 8 U.S.C. § 1101 (a) (43). See Immigration Act of 1990, Pub. L. No. 101-649, § 505, 104 Stat. 4978, 5050 (1990) (eliminating judge's authority to issue recommendation against deportation); Antiterrorism and Effective Death Penalty Act of 1996, Pub. L. No. 104-132, § 442 (a) (5), 110 Stat. 1214, 1279–80 (1996) (eliminating United States attorney general's discretion to grant relief from deportation for aliens who are not permanent residents); Illegal Immigration Reform and Immigrant Responsibility Act of 1996, Pub. L. No. 104-208, § 348, 110 Stat. 3009-546, 3009-639 (1996) (eliminating United States attorney general's discretion to grant relief from deportation for aliens who are permanent residents). Because the petitioner in the present case does not challenge the collateral nature of deportation, we need not consider what effect, if any, these amendments to the INA would have on our jurisprudence regarding the immigration consequences of a criminal conviction. We note, however, that most jurisdictions that have addressed this issue have concluded that immigration consequences continue to be collateral in nature, despite their virtual inevitability, because they are beyond the control and responsibility of the court in which the defendant was convicted. See, e.g., *Broomes* v. *Ashcroft*, 358 F.3d 1251, 1256–57 (10th Cir.), cert. denied, 543 U.S. 1034, 125 S. Ct. 809, 160 L. Ed. 2d 597 (2004); *El-Nobani* v. *United States*, 287 F.3d 417, 421 (6th Cir. 2002); *United States* v. *Amador-Leal*, 276 F.3d 511, 516–17 (9th Cir.), cert. denied, 535 U.S. 1070, 122 S. Ct. 1946, 152 L. Ed. 2d 849 (2002); *United States* v. *Gonzalez*, 202 F.3d 20, 27 (1st Cir. 2000).

*State* v. *Aquino*, 89 Conn. App. 395, 406–407, 873 A.2d 1075 (2005) (same), appeal dismissed, 279 Conn. 293, 901 A.2d 1194 (2006); *State* v. *Irala*, 68 Conn. App. 499, 520–26, 792 A.2d 109 (same), cert. denied, 260 Conn. 923, 797 A.2d 519, cert. denied, 537 U.S. 887, 123 S. Ct. 132, 154 L. Ed. 2d 148 (2002). Deportation is a collateral consequence because deportation proceedings are "beyond the control and responsibility of the [trial] court in which [the petitioner's criminal] conviction was entered." (Internal quotation marks omitted.) *El-Nobani* v. *United States*, 287 F.3d 417, 421 (6th Cir. 2002); see also *Broomes* v. *Ashcroft*, 358 F.3d 1251, 1256–57 (10th Cir.) (deportation collateral consequence of criminal conviction because state courts have no control over whether criminal defendant will be deported), cert. denied, 543 U.S. 1034, 125 S. Ct. 809, 160 L. Ed. 2d 597 (2004); *United States* v. *Gonzalez*, 202 F.3d 20, 27 (1st Cir. 2000) (deportation "remains beyond the control and responsibility of the district court in which that conviction was entered and it thus remains a collateral consequence thereof"); *Fruchtman* v. *Kenton*, 531 F.2d 946, 949 (9th Cir.) (deportation is collateral consequence of guilty plea because it is "not the sentence of the court which accepted the plea but of another agency over which the trial judge has no control and for which he has no responsibility" [internal quotation marks omitted]), cert. denied, 429 U.S. 895, 97 S. Ct. 256, 50 L. Ed. 2d 178 (1976); *United States* v. *Parrino*, 212 F.2d 919, 921 (2d Cir.) (deportation collateral consequence of guilty plea), cert. denied, 348 U.S. 840, 75 S. Ct. 46, 99 L. Ed. 663 (1954).

Pursuant to *Maleng* and *Lebron*, "once the sentence imposed for a conviction has completely expired, the collateral consequences of that conviction are not themselves sufficient to render an individual 'in custody' for the purposes of a habeas attack upon it." *Maleng* v. *Cook*, supra, 490 U.S. 492; see also *Lebron* v. *Commis-*

*sioner of Correction,* supra, 274 Conn. 530–31. Because the petitioner's Stamford and Norwalk convictions had expired completely by the time the petitioner's habeas petition had been filed, and because the current deportation proceedings are a collateral consequence of the petitioner's expired Norwalk conviction, the petitioner is not in "custody" within the meaning of § 52-466. Cf. *Kandiel* v. *United States,* 964 F.2d 794, 796 (8th Cir. 1992) (per curiam) ("[b]ecause [the petitioner's] sentence was fully expired by the time he filed his [federal habeas petition] and the current deportation proceedings against him are merely a collateral consequence of his conviction, he is not 'in custody' "); *Neyor* v. *Immigration & Naturalization Service,* 155 F. Sup. 2d 127, 131–34 (D.N.J. 2001) (petitioner not in custody on expired state conviction, despite deportation proceedings predicated on that conviction). Simply stated, the collateral consequences of the petitioner's expired convictions, although severe, are insufficient to render the petitioner in custody on those convictions and, therefore, to invoke the jurisdiction of the habeas court.

The petitioner claims, nonetheless, that he is in custody on his expired Norwalk conviction pursuant to *Garlotte* v. *Fordice,* supra, 515 U.S. 39, because reversal of that conviction would terminate his current federal custody. We reject this claim. In *Garlotte,* the petitioner was serving a series of consecutive sentences imposed by the state of Mississippi when he filed a petition for a writ of habeas corpus in the United States District Court for the Southern District of Mississippi. Id., 41–42. The petition sought "to attack a conviction underlying the sentence that ran first in a consecutive series, a sentence already served, but one that nonetheless persist[ed] to postpone [his] eligibility for parole." Id., 41. To determine whether the petitioner was in custody on his expired conviction, the court looked to its prior case law construing the custody requirement. The court

observed that, in *Peyton* v. *Rowe*, 391 U.S. 54, 88 S. Ct. 1549, 20 L. Ed. 2d 426 (1968), it had held that the term "in custody" encompassed a future consecutive sentence that a habeas petitioner had not yet begun to serve when his habeas petition had been filed. *Garlotte* v. *Fordice*, supra, 40. The court noted that, "[l]ike the habeas petitioners in *Peyton*, [the] petitioner [in *Garlotte*] is incarcerated under consecutive sentences. Unlike the *Peyton* petitioners, however, [the petitioner in *Garlotte*] does not challenge a conviction underlying a sentence yet to be served," but, instead, challenges a conviction underlying a sentence previously served. Id., 41. The court concluded that, despite this factual distinction, "[f]ollowing *Peyton*, we do not disaggregate [consecutive] sentences, but comprehend them as composing a continuous stream," and, therefore, the petitioner in *Garlotte* was in custody on his expired conviction. Id. In arriving at this conclusion, the court recognized that, in *Maleng* v. *Cook*, supra, 490 U.S. 492, it had determined that a petitioner is not in custody on a conviction if the sentence for that conviction had expired completely by the time the habeas petition had been filed. The court distinguished *Maleng*, however, by noting that the petitioner in *Garlotte*, "[u]nlike the habeas petitioner in *Maleng* . . . is serving consecutive sentences. . . . Having construed the statutory term 'in custody' to require that consecutive sentences be viewed in the aggregate, we will not now adopt a different construction simply because the sentence imposed under the challenged conviction lies in the past rather than in the future." (Citation omitted.) *Garlotte* v. *Fordice*, supra, 45–46.

In *Maleng*, the court explicitly rejected the claim that a habeas petitioner is in custody on an expired conviction because reversal of that conviction would advance the date of the petitioner's release from his current confinement. See also *Lebron* v. *Commissioner of Cor-*

*rection*, supra, 274 Conn. 526–27 and n.14 (habeas petitioner not in custody on expired conviction under § 52-466, even though reversal of conviction would advance petitioner's date of release from current confinement). *Garlotte* did not overrule *Maleng* in this respect, but simply determined that a series of consecutive sentences, unlike other forms of custody, are viewed in "the aggregate, not as discrete segments." *Garlotte* v. *Fordice*, supra, 515 U.S. 47. Therefore, a petitioner serving consecutive sentences "remains 'in custody' under all of [the] sentences until all are served . . . ."[29] Id., 41. Because the petitioner in the present case is not serving consecutive sentences, we conclude that *Maleng* and *Lebron*, rather than *Garlotte*, dictate the outcome of the present case.

The petitioner claims, nonetheless, that he is in custody on his expired convictions because a criminal conviction followed by the commencement of deportation proceedings, like the imposition of consecutive sentences, should be treated as a continuous stream of custody. We are not persuaded. In *Peyton* and *Garlotte*, the United States Supreme Court concluded that consecutive sentences constitute a continuous stream of custody because most states aggregate consecutive sentences for various penological purposes, such as parole eligibility and accrual of good time credit. See *Peyton* v. *Rowe*, supra, 391 U.S. 64 ("Practically speaking, [the respondent] is in custody for [fifty] years, or for the aggregate of his [thirty] and [twenty] year sentences. For purposes of his parole eligibility, under Virginia law he is incarcerated for [fifty] years."); *Garlotte* v. *Fordice*, supra, 515 U.S. 46 n.5 ("That Mississippi itself views consecutive sentences in the aggregate for various

---

[29] In order for the *Garlotte* rule to apply, however, "a habeas petitioner's successful challenge to the expired conviction must have some appreciable effect on the amount of time that he spends in custody." *Oliphant* v. *Commissioner of Correction*, 274 Conn. 563, 574 n.9, 877 A.2d 761 (2005).

penological purposes reveals the difficulties that courts and prisoners would face trying to determine when one sentence ends and a consecutive sentence begins. For example, Mississippi aggregates consecutive sentences for purposes of determining parole eligibility . . . and for the purpose of determining commutation of sentences for meritorious earned-time credit." [Citation omitted.]). Moreover, the court was cognizant of the fact that the order in which criminal prosecutions are commenced, and consecutive sentences are imposed, often is arbitrary. See, e.g., *Peyton* v. *Rowe,* supra, 55–56 (noting that petitioner was charged and convicted of rape, and subsequently was charged and convicted of crime that arose out of same sequence of events); *Garlotte* v. *Fordice,* supra, 44 (observing that prosecutor had expressed indifference about order in which petitioner's consecutive sentences should be imposed). These concerns, however, are not implicated in the present factual context. Specifically, we are not aware of any jurisdiction that aggregates a criminal conviction and a subsequent deportation proceeding for penological purposes. Further, a criminal prosecution and a deportation proceeding cannot be commenced in an arbitrary order. Indeed, a deportation proceeding, like all collateral consequences, necessarily arises out of, and is successive to, the conviction of a particular crime. Accordingly, we conclude that the reasoning of *Peyton* and *Garlotte* is inapplicable to the present case.

The petitioner claims, however, that *Simmonds* v. *Immigration & Naturalization Service,* 326 F.3d 351 (2d Cir. 2003), stands for the proposition that a criminal conviction followed by a deportation proceeding constitutes a continuous stream of custody.[30] We disagree. In

---

[30] The petitioner also relies on *Omosefunmi* v. *Attorney General of Massachusetts,* 152 F. Sup. 2d 42 (D. Mass. 2001), in support of this claim. In *Omosefunmi,* the petitioner filed a federal petition for a writ of habeas corpus in the United States District Court for the District of Massachusetts challenging various expired state convictions. Id., 46–52. The District Court concluded that the petitioner was not in custody on the state convictions

*Simmonds*, the petitioner was incarcerated pursuant to a state conviction when he filed a petition for a writ of habeas corpus in the United States District Court for the Eastern District of New York, challenging a final order of removal issued by the INS. Id., 353. The United States Court of Appeals for the Second Circuit observed that, ordinarily, a final order of removal is sufficient, by itself, to render a habeas petitioner in the custody of the INS. Id., 354. The INS claimed, however, that the petitioner was not in INS custody because the order of removal could not be executed until after the petitioner had finished serving his state sentences. Id., 355. The Court of Appeals rejected this claim, reasoning that the petitioner's "position is the same as that of an ordinary habeas petitioner who seeks to attack a sentence of incarceration, in one jurisdiction, when that sentence was made consecutive to the one the petitioner is then serving in another jurisdiction. In such circumstances, it is well established that custody exists in both jurisdictions and hence that habeas may lie to attack the *future* sentence . . . ." (Emphasis added.) Id. The court did not conclude, as the petitioner in this case suggests, that the petitioner in *Simmonds* was in INS custody because a state sentence and a final order of removal constitute a continuous stream of custody. Rather, the court simply acknowledged that *future* custody may operate as a *present* restraint on liberty sufficient to render the petitioner in the custody of the *future custo-*

under attack because those convictions had expired completely by the time the habeas petition had been filed. Id., 53. The court proceeded to observe, however, that the petitioner was subject to an outstanding order of deportation, and that the INS actively was attempting to deport the petitioner. Because deportation proceedings constitute "a sufficient restraint on [the] petitioner's liberty to satisfy the 'in custody' requirement," the District Court concluded that the petitioner was "in custody" for purposes of the federal habeas statute. Id. Because the District Court concluded that the petitioner was not in custody on his expired state convictions, but, rather, was in the custody of the INS pending deportation, we conclude that the petitioner's reliance on *Omosefunmi* is misplaced.

*dian*, even in the absence of a continuous stream of custody. See id., 354 ("[a]lthough [the petitioner] is not, literally, a prisoner of the INS, courts have long recognized that the writ is available to those who, although not actually imprisoned, suffer such a curtailment of liberty as to render them 'in custody' "); see also *Braden* v. *30th Judicial Circuit Court of Kentucky*, 410 U.S. 484, 488–89, 93 S. Ct. 1123, 35 L. Ed. 2d 443 (1973) (petitioner, who was serving Alabama state sentence when habeas petition was filed, was in custody of state of Kentucky because he was subject to outstanding Kentucky indictment and interstate detainer); *Frazier* v. *Wilkinson*, 842 F.2d 42, 43–45 (2d Cir.) (petitioner, who was serving federal sentence when habeas petition was filed, was in custody of state of New York, despite absence of detainer, because there was reasonable basis to apprehend that New York would require petitioner to serve his state sentence), cert. denied, 488 U.S. 842, 109 S. Ct. 114, 102 L. Ed. 2d 88 (1988); cf. 28 J. Moore, Federal Practice (3d Ed. 2006) § 671.04 [2], pp. 671-130 through 671-131 ("the custody requirement is satisfied by a wide variety of restraints not involving actual physical incarceration, including . . . being the subject of an out-of-state detainer"). Because the habeas petition in the present case does not challenge future custody, but, rather, challenges the petitioner's prior expired convictions, we conclude that the petitioner's reliance on *Simmonds* is misplaced.

Lastly, the petitioner claims that he is in custody on his expired Stamford and Norwalk convictions pursuant to *Lackawanna County District Attorney* v. *Coss*, supra, 532 U.S. 394, because " 'no channel of review was actually available to [the petitioner] with respect to [his] prior conviction[s], due to no fault of his own.' " We reject this claim. In *Maleng* v. *Cook*, supra, 490 U.S. 492, the United States Supreme Court concluded that "once the sentence imposed for a conviction has com-

pletely expired, the collateral consequences of that conviction are not themselves sufficient to render an individual 'in custody' for the purposes of a habeas attack upon it." In *Lebron,* we observed that in *Lackawanna County District Attorney,* the court "did not change this conclusion, but merely went beyond the jurisdictional question presented in *Maleng* to consider the extent to which *the [prior expired] conviction itself* may be subject to challenge *in [an] attack upon the [current] senten[ce]* which it was used to enhance."[31] (Emphasis in original; internal quotation marks omitted.) *Lebron* v. *Commissioner of Correction,* supra, 274 Conn. 527. In the present case, the petitioner does not challenge his current federal custody, but, rather, challenges his expired Stamford and Norwalk convictions directly.[32] Accordingly, *Lackawanna County District*

---

[31] In *Lebron,* we expressly "reject[ed] the petitioner's argument that *Lackawanna County District Attorney* represents an exception to the rule in *Maleng* that the collateral consequences of an expired conviction are insufficient to render a petitioner in custody on the expired conviction at the time the petition is filed." *Lebron* v. *Commissioner of Correction,* supra, 274 Conn. 527 n.15. We noted that, "[c]ontrary to the petitioner's assertion, the court in *Lackawanna County District Attorney,* explicitly affirmed its conclusion in *Maleng.* See *Lackawanna County District Attorney* v. *Coss,* supra, 532 U.S. 401 (citing to *Maleng,* and concluding that petitioner is 'no longer serving the sentences imposed pursuant to his 1986 convictions, and therefore cannot bring a federal habeas petition directed solely at those convictions')." *Lebron* v. *Commissioner of Correction,* supra, 527–28 n.15.

[32] We note that the petitioner cannot challenge his current federal custody in the courts of this state under § 52-466. See, e.g., *Ex parte Royall,* 117 U.S. 241, 249–50, 6 S. Ct. 734, 29 L. Ed. 868 (1886) (state courts "cannot, under any authority conferred by the States, discharge from custody persons held by authority of the courts of the United States, or of commissioners of such courts, or by officers of the General Government acting under its laws" because of "the supremacy of the Constitution and laws of the United States"); *In re Tarble,* 80 U.S. (13 Wall.) 397, 409, 20 L. Ed. 597 (1871) ("State judges and State courts, authorized by laws of their States to issue writs of habeas corpus, have undoubtedly a right to issue the writ in any case where a party is alleged to be illegally confined within their limits, unless it appear upon his application that he is confined under the authority, or claim and color of the authority, of the United States, by an officer of that government. If such fact appear upon the application the writ should be refused.").

*Attorney* has no bearing on the petitioner's claim. See *Lebron* v. *Commissioner of Correction*, supra, 528 ("[b]ecause the habeas petition in the present matter does not attack the petitioner's current, allegedly enhanced sentence, but instead attacks the petitioner's expired conviction directly . . . *Lackawanna County District Attorney* has no bearing on the petitioner's claim").

For the foregoing reasons, we conclude that the habeas court lacked subject matter jurisdiction over the petitioner's habeas petition because the petitioner was not in custody on his expired Stamford and Norwalk convictions when his petition was filed.

C

Lastly, the petitioner claims that the habeas court failed to construe his petition for a writ of habeas corpus as a pleading over which the habeas court would have had subject matter jurisdiction, namely, a writ of error coram nobis.[33] Specifically, the petitioner claims that, because he was proceeding pro se when he filed his first habeas petition, the habeas court should have construed his petition liberally. We conclude that the liberal rule of construction for pro se pleadings is inapplicable to the present case. We further conclude that, because the petitioner did not raise his writ of error coram nobis claim before the habeas court, it is not preserved for our review.

---

[33] "A writ of error coram nobis is an ancient common-law remedy which authorized the trial judge, within three years, to vacate the judgment of the same court if the party aggrieved by the judgment could present facts, not appearing in the record, which, if true, would show that such judgment was void or voidable. . . . The facts must be unknown at the time of the trial without fault of the party seeking relief. . . . A writ of error coram nobis lies only in the unusual situation where no adequate remedy is provided by law. . . . Moreover, when habeas corpus affords a proper and complete remedy the writ of error coram nobis will not lie." (Citations omitted; internal quotation marks omitted.) *State* v. *Henderson*, 259 Conn. 1, 3, 787 A.2d 514 (2002) (per curiam).

"[I]t is the established policy of the Connecticut courts to be solicitous of pro se litigants and when it does not interfere with the rights of other parties to construe the rules of practice liberally in favor of the pro se party. . . . The courts adhere to this rule to ensure that pro se litigants receive a full and fair opportunity to be heard, regardless of their lack of legal education and experience . . . . This rule of construction has limits, however. Although we allow pro se litigants some latitude, the right of self-representation provides no attendant license not to comply with relevant rules of procedural and substantive law. . . . A habeas court does not have the discretion to look beyond the pleadings and trial evidence to decide claims not raised. . . . In addition, while courts should not construe pleadings narrowly and technically, courts also cannot contort pleadings in such a way so as to strain the bounds of rational comprehension." (Citations omitted; internal quotation marks omitted.) *Oliphant* v. *Commissioner of Correction*, 274 Conn. 563, 569–70, 877 A.2d 761 (2005).

Our review of the record reveals that, although the petitioner was proceeding pro se when he had filed his first petition for a writ of habeas corpus on March 13, 2002, he was represented by counsel when he filed both his first and second amended petitions for writs of habeas corpus on April 2 and April 20, 2004, respectively. See footnote 11 of this opinion. Because the second amended petition is the operative petition for purposes of the present appeal, and because the second amended petition was prepared with the assistance of counsel, we conclude that the liberal rule of construction for pro se pleadings is inapplicable to the present case.

We next consider whether the habeas court nonetheless should have construed the petitioner's habeas petition as a writ of error coram nobis. Our review of the

record reveals that the petitioner did not raise this claim before the habeas court. "We have stated repeatedly that we ordinarily will not review an issue that has not been properly raised before the trial court. *Bell Atlantic Mobile, Inc.* v. *Dept. of Public Utility Control,* 253 Conn. 453, 485, 754 A.2d 128 (2000); see Practice Book § 60-5 (court shall not be bound to consider a claim unless it was distinctly raised at the trial or arose subsequent to the trial); *Santopietro* v. *New Haven,* 239 Conn. 207, 219–20, 682 A.2d 106 (1996) (court not required to consider any claim that was not properly preserved in the trial court); *Yale University* v. *Blumenthal,* 225 Conn. 32, 36 n.4, 621 A.2d 1304 (1993) (court declined to consider issues briefed on appeal but not raised at trial). Only in [the] most exceptional circumstances can and will this court consider a claim, constitutional or otherwise, that has not been raised and decided in the trial court. *State* v. *Evans,* 165 Conn. 61, 69, 327 A.2d 576 (1973)." (Internal quotation marks omitted.) *River Bend Associates, Inc.* v. *Conservation & Inland Wetlands Commission,* 269 Conn. 57, 82, 848 A.2d 395 (2004). Accordingly, we conclude that the petitioner's claim is not preserved for our review. Cf. *Resendiz* v. *Kovensky,* 416 F.3d 952, 960 (9th Cir.) (declining to review claim that district court improperly failed to construe habeas petition as writ of error coram nobis because claim had not been preserved), cert. denied sub nom. *Resendiz* v. *Hodgson,* 546 U.S. 1043, 126 S. Ct. 757, 163 L. Ed. 2d 589 (2005).

The judgment of the habeas court is affirmed.

In this opinion the other justices concurred.