******************************************

The "officially released" date that appears near the beginning of an opinion is the date the opinion will be published in the Connecticut Law Journal or the date it is released as a slip opinion. The operative date for the beginning of all time periods for the filing of postopinion motions and petitions for certification is the "officially released" date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying an opinion that appear in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced or distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************

## THOMAS BONILLA *v.* COMMISSIONER OF CORRECTION
### (AC 46835)

Elgo, Moll and Cradle, Js.*

*Syllabus*

The petitioner, who had previously been convicted, following a jury trial, of, inter alia, felony murder, appealed, on the granting of certification, from the judgment of the habeas court denying his petition for a writ of habeas corpus. He claimed, inter alia, that the court committed plain error when the judge failed to disqualify himself on the ground that he had represented the petitioner in an unrelated matter almost twenty years earlier. *Held*:

The petitioner failed to demonstrate that the habeas judge committed plain error in not disqualifying himself from this matter on the basis of his previous, unrelated representation of the petitioner, as the petitioner, who had cause to know of his prior interactions with the judge, implicitly consented to the judge's adjudication of his petition and waived his right to challenge the decision on this basis.

The habeas court did not err in rejecting the petitioner's claims of ineffective assistance of his prior habeas counsel, as those claims lacked merit.

Argued February 11—officially released April 8, 2025

*Procedural History*

Amended petition for a writ of habeas corpus, brought to the Superior Court in the judicial district of Tolland and tried to the court, *Bhatt, J.*; judgment denying the petition, from which the petitioner, on the granting of certification to appeal, appealed to this court. *Affirmed.*

*Judie L. Marshall*, assigned counsel, for the appellant (petitioner).

*James A. Killen*, senior assistant state's attorney, with whom, on the brief, were *Maureen Platt*, state's attorney, and *Mark Ramia*, senior assistant state's attorney, for the appellee (respondent).

---

* The listing of judges reflects their seniority status on this court as of the date of oral argument.

*Opinion*

CRADLE, J. The petitioner, Thomas Bonilla, appeals from the judgment of the habeas court denying his petition for a writ of habeas corpus. The petitioner claims that the court committed plain error when the habeas judge failed to disqualify himself on the ground that he had represented the petitioner in an unrelated matter several years earlier. The petitioner also claims that the court erred in rejecting his claims of ineffective assistance of his prior habeas counsel. We affirm the judgment of the habeas court.

The following procedural history is relevant to our consideration of the petitioner's claims on appeal. In 2012, following a jury trial, the petitioner was convicted of murder as an accessory in violation of General Statutes §§ 53a-8 (a) and 53a-54a (a) and felony murder in violation of General Statutes § 53a-54c. He was sentenced to sixty years of incarceration. Our Supreme Court affirmed the judgment of conviction. *State* v. *Bonilla*, 317 Conn. 758, 120 A.3d 481 (2015).

The petitioner thereafter filed a petition for a writ of habeas corpus, which was denied by the habeas court, *Westbrook, J.* This court dismissed the petitioner's appeal from the habeas court's judgment. *Bonilla* v. *Commissioner of Correction*, 186 Conn. App. 901, 196 A.3d 883 (2018).

On January 28, 2019, the petitioner filed this action seeking a writ of habeas corpus on the ground that his prior habeas counsel rendered ineffective assistance. On June 28, 2023, following a trial, the habeas court, *Bhatt, J.*, filed a memorandum of decision rejecting all of the petitioner's claims and denying his petition for a writ of habeas corpus. The court thereafter granted the petitioner's certification to appeal, and this appeal followed.

On February 15, 2024, the petitioner's appellate counsel, Attorney Judie L. Marshall, filed a motion for articulation pursuant to Practice Book (2024) § 66-5.[1] In that motion, the petitioner's counsel represented: "While reviewing the file materials and researching the petitioner's case, undersigned counsel discovered that Judge Bhatt previously represented the petitioner in his former capacity as a Deputy Assistant Public Defender in [*Bonilla* v. *Warden,* Superior Court, judicial district of Tolland, Docket No. CV-05-4000305-S]. Judge Bhatt's prior representation was not disclosed on the record, nor was a waiver made by the petitioner prior to Judge Bhatt presiding over the petitioner's habeas trial.

"The petitioner has identified the following claim for appeal: whether the failure of a trial judge, who had previously represented the petitioner in a criminal matter, to remove himself from presiding over the petitioner's habeas trial, constituted reversible error.

"The need for articulation arises from the fact that the record does not reflect whether the habeas court

---

[1] Practice Book (2024) § 66-5 provides in relevant part: "A motion . . . seeking an articulation or further articulation of the decision of the trial court shall be called . . . a motion for articulation . . . . Any motion filed pursuant to this section shall state with particularity the relief sought and shall be filed with the appellate clerk. Any other party may oppose the motion by filing an opposition with the appellate clerk within ten days of the filing of the motion for . . . articulation. The trial court may, in its discretion, require assistance from the parties in providing an articulation. Such assistance may include, but is not limited to, provision of copies of transcripts and exhibits.

"The appellate clerk shall forward the motion for . . . articulation and the opposition, if any, to the trial judge who decided, or presided over, the subject matter of the motion for . . . articulation for a decision on the motion. If any party requests it and it is deemed necessary by the trial court, the trial court shall hold a hearing at which arguments may be heard, evidence taken or a stipulation of counsel received and approved. The trial court may make such corrections or additions as are necessary for the proper presentation of the issues. The clerk of the trial court shall list the decision on the trial court docket and shall send notice of the court's decision on the motion to the appellate clerk, and the appellate clerk shall issue notice of the decision to all counsel of record. . . ."

acknowledged the conflict or whether the petitioner waived the conflict.”

The respondent, the Commissioner of Correction, filed an opposition to the motion for articulation, arguing that a motion for articulation was not the proper vehicle to raise such a claim because, “as the petitioner recounts, the existing record shows no on the record disclosure of Judge Bhatt’s alleged prior representation of the petitioner and no express waiver by the petitioner.”

On March 7, 2024, the habeas court, *Bhatt, J.*, held a hearing on the motion for articulation. At the outset of that hearing, the court told the parties: “I have to disclose [that] for a period of two years, [the petitioner] filed a grievance against me. The matter has been resolved. It doesn’t pose any issues for me, but if anybody wants to make a motion, this would be your time to do so.”[2] The court also explained: “I would also disclose as I normally would, now that it has been

---

[2] The petitioner did not file any such motion or take any other action pertaining to the grievance. In fact, counsel for the petitioner did not mention the grievance during the hearing before the habeas court. The petitioner does not assert a distinct claim in his brief to this court that Judge Bhatt should have disqualified himself from the petitioner’s habeas trial on the basis of the grievance. He focuses, rather, on Judge Bhatt’s prior representation of him, as discussed herein, and makes only cursory mention of the grievance.

At oral argument before this court, the petitioner claimed for the first time that Judge Bhatt should have disclosed to the parties that the petitioner had filed a grievance against him in connection with his prior representation of him. As noted, the petitioner has not briefed this claim beyond the mere mention that Judge Bhatt’s “impartiality might reasonably be questioned since he had previously represented the petitioner and because the petitioner had filed a grievance against him.” Also, because the petitioner failed to raise this issue before the habeas court, the record is inadequate to review this claim because it does not contain any information about the grievance beyond Judge Bhatt disclosing that it had been filed against him. And finally, we recognize that the petitioner knew or should have known that he had filed a grievance against Judge Bhatt several years ago and thus could have moved to disqualify him on that basis prior to or during trial.

revealed or refreshed my recollection that, apparently, I did represent [the petitioner] a long time [ago] . . . in 2004 or 2005. I have no recollection of that and didn't at the time of trial, but now that . . . my memory has been refreshed, I am making that disclosure as I would have done at the time had I been aware of it or had it been brought to my attention.''

On March 12, 2024, the habeas court, *Bhatt, J.*, issued the following written articulation: "To the extent that the [petitioner's] motion seeks an articulation of whether the conflict was acknowledged by me or waived by [the petitioner], I now clarify that no such discussion occurred because, at the time of [the] habeas trial, I did not recall that I had represented [the petitioner] from approximately 2005 to 2006 in an unrelated habeas matter, nor was it brought to my attention at that time. Thus, nothing was disclosed and nothing was waived.''

The petitioner claims on appeal that Judge Bhatt committed plain error when he failed to disqualify himself from hearing the petitioner's habeas action on the ground that Judge Bhatt had represented the petitioner in an unrelated matter several years earlier. "[T]he plain error doctrine . . . has been codified at Practice Book § 60-5, which provides in relevant part that [t]he court may reverse or modify the decision of the trial court if it determines . . . that the decision is . . . erroneous in law. . . . The plain error doctrine is not . . . a rule of reviewability. It is a rule of reversibility. That is, it is a doctrine that this court invokes in order to rectify a trial court ruling that, although either not properly preserved or never raised at all in the trial court, nonetheless requires reversal of the trial court's judgment, for reasons of policy. . . . The plain error doctrine is reserved for truly extraordinary situations where the existence of the error is so obvious that it affects the fairness and integrity of and public confidence in the

judicial proceedings. . . . A party cannot prevail under plain error unless it has demonstrated that the failure to grant relief will result in manifest injustice." (Footnote omitted; internal quotation marks omitted.) *Ajadi* v. *Commissioner of Correction*, 280 Conn. 514, 526, 911 A.2d 712 (2006).

Pursuant to our rules of practice; see Practice Book § 1-22; a judge shall be disqualified in a matter if it is required by rule 2.11 of the Code of Judicial Conduct, which provides in relevant part that "[a] judge shall disqualify himself . . . in any proceeding in which the judge's impartiality might reasonably be questioned including, but not limited to, the following circumstances . . . [t]he judge . . . served as a lawyer in the matter in controversy . . . ." Code of Judicial Conduct, Rule 2.11 (a) (5) (A). In applying this rule, "[t]he reasonableness standard is an objective one. Thus, the question is not only whether the particular judge is, in fact, impartial but whether a reasonable person would question the judge's impartiality on the basis of all the circumstances. . . . Moreover, it is well established that [e]ven in the absence of actual bias, a judge must disqualify himself in any proceeding in which his impartiality might reasonably be questioned, because the appearance and the existence of impartiality are both essential elements of a fair exercise of judicial authority." (Citation omitted; internal quotation marks omitted.) *Ajadi* v. *Commissioner of Correction*, supra, 280 Conn. 527–28. "Nevertheless, because the law presumes that duly elected or appointed judges, consistent with their oaths of office, will perform their duties impartially . . . the burden rests with the party urging disqualification to show that it is warranted." (Internal quotation marks omitted.) *State* v. *Milner*, 325 Conn. 1, 12, 155 A.3d 730 (2017).

"It is well settled that, in both civil and criminal cases, the failure to raise the issue of [judicial] disqualification

either before or during the trial, can be construed as the functional equivalent of consent in open court . . . . This is because we will not permit parties to anticipate a favorable decision, reserving a right to impeach it or set it aside if it happens to be against them, *for a cause which was well known to them before or during the trial.* We have repeatedly indicated our disfavor with the failure, whether because of a mistake of law, inattention or design, to object to errors occurring in the course of a trial until it is too late for them to be corrected, and thereafter, if the outcome of the trial proves unsatisfactory, with the assignment of such errors as grounds of appeal. . . . Thus, to consent in open court, the parties must know or have reason to know of the judge's participation in the trial proceedings and the facts that require the judge to disqualify himself, but, nonetheless, fail to object in a timely manner." (Citations omitted; emphasis in original; internal quotation marks omitted.) *Ajadi* v. *Commissioner of Correction*, supra, 280 Conn. 530. In *Ajadi*, our Supreme Court found that the petitioner "did not become aware of the identity of the habeas judge until *after* the habeas proceedings had concluded completely" and, on that ground, rejected the respondent's claim of implicit consent. (Emphasis in original.) Id., 531. Here, the petitioner certainly had cause to know of his own prior interactions with Judge Bhatt, and he was present in court for the two day trial on his habeas petition. Therefore, by not objecting until after Judge Bhatt issued a decision adverse to the petitioner's interests, the petitioner implicitly consented to Judge Bhatt's adjudication of his habeas petition and waived his right to challenge Judge Bhatt's decision on this basis.

Even if we were to conclude that the petitioner had not implicitly consented to Judge Bhatt's adjudication of his habeas petition, he has failed to demonstrate that the judgment should be reversed for plain error. In

support of his claim, the petitioner cites two cases, *Ajadi* v. *Commissioner*, supra, 280 Conn. 514, and *Belcher* v. *State*, 99 Conn. App. 353, 913 A.2d 1117 (2007). Although the court concluded in those cases that it was plain error for the judge not to disqualify himself, they are both distinguishable from the case at hand in that the judges in those cases had previously represented the petitioner in the matter in controversy. In *Ajadi,* the habeas judge "presided over a habeas petition that initially had alleged, in relevant part, that his own prior representation of the petitioner was so deficient that it deprived the petitioner of counsel in violation of the sixth amendment to the federal constitution." *Ajadi* v. *Commissioner of Correction,* supra, 529. In *Belcher,* the petitioner filed a petition for a new trial alleging that he had discovered material evidence in his favor that had been unavailable before or during his criminal trial. *Belcher* v. *State,* supra, 356. The trial judge who had denied the petition for a new trial had represented the petitioner in the direct appeal from his criminal conviction. Id., 357. Here, it is undisputed that Judge Bhatt did not represent the petitioner in this matter. Rather, the record reflects that Judge Bhatt represented the petitioner in an unrelated matter almost twenty years prior to this action.

The petitioner nevertheless argues that, "[a]lthough the petitioner was represented by Judge Bhatt in a different matter, prior representation nevertheless occurred. Judge Bhatt, in representing the petitioner, was in a position to learn about the petitioner, his family, his criminal history, his gang affiliation, and other factors that could impact his neutrality."[3] We conclude that the

---

[3] We note that, even in cases in which a judge has participated in earlier proceedings in the matter in controversy, we have explained that "[o]pinions that judges may form as a result of what they learn in earlier proceedings in the same case rarely constitute the type of bias, or appearance of bias, that requires recusal. . . . To do so, *an opinion must be so extreme as to display clear inability to render fair judgment. . . .* In the absence of unusual circumstances, therefore, equating knowledge or opinions acquired

petitioner has failed to demonstrate that Judge Bhatt committed plain error in not disqualifying himself from this matter on the basis of his representation of the petitioner in an unrelated matter almost twenty years ago.

As to the petitioner's challenges to the court's rejection of his claims of ineffective assistance of his prior habeas counsel, we have thoroughly reviewed the record and the relevant legal principles and, on the basis of that review, we conclude that those claims lack merit.

The judgment is affirmed.

In this opinion the other judges concurred.

———————————

during the course of an adjudication with an appearance of impropriety or bias requiring recusal finds no support in law, ethics or sound policy." (Emphasis in original; internal quotation marks omitted.) *State* v. *Scott*, 191 Conn. App. 315, 355, 214 A.3d 871, cert. denied, 333 Conn. 917, 216 A.3d 651 (2019). We reiterate that Judge Bhatt did not recall that he had represented the petitioner several years earlier until it was brought to his attention by the petitioner's counsel several months after he issued his decision in this matter.